Filed 9/11/13  P. v. Barilo CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>VIKTOR BARILO,<br><br>    Defendant and Appellant. | G047386<br><br>(Super. Ct. No. RIF138738)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Riverside County, Harry A. Staley, Judge.  (Retired judge of the Kern Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed in part and remanded with directions.

Rex Williams, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Kathryn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

Viktor Barilo (defendant) appeals from the judgment following his conviction on six counts of attempted sex crimes involving a minor: count 1, attempted lewd and lascivious conduct on a minor under the age of 14 (Pen. Code §§ 664, 288, subd. (a); all further statutory references are to this code); count 2, attempted oral copulation with a minor under the age of 14 and at least 10 years younger than defendant (§§ 664, 288a, subd. (c)); count 3, attempted showing up at an arranged meeting with a person believed to be a minor with intent to engage in lewd and lascivious acts (§§ 664, 288.3, subd. (b)); and counts 4-6, attempted showing, distributing or sending harmful material to a minor with the intent of seducing the minor (§§ 664, 288.2, subd. (a).) With credit for time served, defendant was sentenced to a total of 20 months in prison, but execution of that sentence was suspended and defendant was placed on probation for 3 years.

Defendant challenges his convictions on all counts other than count 1 on the merits, arguing: (1) his conviction on count 2 (attempted oral copulation) must be reversed because it is unsupported by substantial evidence; (2) his conviction on count 3 (attempting to show up at a meeting with a person believed to be a minor with the intent to engage in lewd and lascivious acts) must be reversed because the court failed to properly instruct the jury on all the elements of the offense; and (3) his convictions on counts 4-6 (attempted showing distributing or sending harmful material to a minor with the intent of seducing the minor) must be reversed because the crime is facially overbroad in violation of the First Amendment. We reject these contentions and consequently affirm defendant's convictions.

Defendant also claims the $200 fine imposed against him pursuant to section 288 was unauthorized and must be stricken, and contends that two minute orders reflecting his convictions and sentence are erroneous and must be corrected. We conclude the fine was proper, but as the Attorney General concedes, the minute orders are both inaccurate. On remand, the minute orders must be corrected.

2

FACTS

Defendant's convictions arose out of a sting operation. In June 2007 he initiated contact through an Internet chat room with a person using the name "Jazzzyjen113" (Jazzzyjen) whom he believed to be a 13-year-old girl. Jazzzyjen was instead a police detective. Once he established contact with Jazzzyjen, defendant asked if they could communicate privately, using instant messaging. Thereafter, the two engaged in an explicit conversation about Jazzzyjen's sexual experience, her likes and dislikes, and her interest in "[o]lder guys." Jazzzyjen asked defendant if he liked "having fun," and he replied "I love it, but it's jail time for me LOL you are 13."

In the course of the conversation, defendant asked Jazzzyjen if she was alone and when her mother was likely to be at work. After defendant and Jazzzyjen exchanged photographs (defendant's was made using his computer's Web camera and Jazzzyjen's was "a stock photo off the Internet"), defendant used his Web camera to display his erect penis to Jazzzyjen. Defendant asked Jazzzyjen if she wanted to "suck" and she replied "yeah." After some further explicit conversation, Jazzzyjen claimed her mother had arrived home, asked defendant when they could chat further, and terminated the conversation.

Less than two weeks after the first conversation, defendant initiated contact with Jazzzyjen again. As before, their conversation was sexually explicit, with defendant asking Jazzzyjen what she liked and the extent of her sexual experience. He also described in some detail what sex acts he would like to engage in with her. He sent her a video of his face and a photograph of his penis. He offered to meet with her at her home while her mother was at work.

The next day, defendant initiated a third conversation with Jazzzyjen. Again, the conversation was sexually explicit, with defendant suggesting sexual acts for Jazzzyjen to engage in, and her claiming a reaction to having done so.

3

Defendant initiated his fourth conversation with Jazzzyjen four days after the third. He told Jazzzyjen he wanted to meet with her and "play." She told him her mother was then on vacation, so "maybe next week." Defendant told Jazzzyjen he wanted her to be his "naughty girl," and described explicit sexual acts he wanted to perform on her. She asked if he had "any of those porn videos we can watch," suggesting a movie might "give me some ideas on how to tease you."

Five days after that, on July 28, 2007, Jazzzyjen sent defendant an address where they could meet – a shopping center near the freeway. He responded on July 30, telling her that "[s]ometime[] in mid-August I will come over and spend a day with you. We just have to figure out when."

On August 6, 2007, defendant initiated yet another conversation, once again sexually explicit, and they discussed meeting the following week. And again he sent her a video of his exposed penis.

Three weeks later, on August 27 (a Monday), defendant again contacted Jazzzyjen and suggested "[m]aybe I'll come over on Wednesday." After Jazzzyjen replied "[t]hat'd be cool," he told her "[y]ou can suck my dick real good then." He asked her for her address, but she informed him "you won't be able to find it" and then suggested "we can meet at Farmer Boys [the shopping center she'd identified previously] a couple of blocks away, and then I can show you the way here." He agreed, and requested she not wear panties to their meeting "so I can start fingering you in the car." At her request, he described the make, model and color of the car he would be driving. He then told her "I'm going to pick you up and take you home. That's where the real fun will begin."

On August 29, the meeting was postponed to the next day. On August 30, when defendant showed up at the shopping center, driving the car he had described to Jazzzyjen, he was arrested. A subsequent search of his home and computer connected him to the communications with Jazzzyjen. The search of defendant's computer also

4

revealed evidence of hundreds of other "chats" with Internet users who described themselves as girls under the age of 18, although defendant disputed that those chats – carried out under a different screen name than the one he admittedly used with Jazzzyjen – were his.

Defendant also admitted he had been engaging in "those kinds of chats" at issue in this case for years, but claimed he had never engaged in sexually explicit chats with anyone he did not believe to be an adult. He denied believing Jazzzyjen was 13, and characterized their chats as "some kind of a game," noting that people often lie about themselves in Internet chat rooms. Defendant emphasized that he and Jazzzyjen both used "LOL" a lot in their exchanges, and claimed that usage revealed both of them were treating the conversations as a joke. He testified he had believed Jazzzyjen to be an adult when he agreed to meet her at the shopping center, and that he would have driven away if approached by a 13-year-old girl.

DISCUSSION

1. *Sufficiency of the Evidence to Establish Attempt*

Defendant first argues that his conviction on count 2, attempted oral copulation with a minor under the age of 14 and at least 10 years younger than he, is unsupported by substantial evidence that when he travelled to the shopping center, he did so with the specific intent to engage in oral sex with the fictional Jazzzyjen. We disagree.

"'In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.]' [Citation.] We resolve all conflicts in the evidence and questions of credibility in favor of the verdict, and indulge every reasonable inference the jury could draw from the evidence.

5

[Citation.] This standard applies whether direct or circumstantial evidence is involved." (*People v. Mendez* (2010) 188 Cal.App.4th 47, 56.)

Defendant points out that in order to be convicted of an attempt, the evidence must show he went beyond mere preparation and took an "immediate step in *the present execution* of the criminal design." (*Hatch v. Superior Court* (2000) 80 Cal.App.4th 170, 185, italics added.) That is correct. Moreover, we agree that merely participating in Internet chats about oral sex, no matter how explicit, would not qualify as an attempt *to engage in* oral sex. Where we depart from defendant's analysis, however, is when he contends that his act of driving to the place where he had arranged to meet Jazzzyjen would not qualify as an "immediate step" toward present execution of his planned oral copulation of a 13-year-old girl.

According to defendant, the evidence suggests only that he drove to the shopping center to "contemplate[] whether and where to engage in sexual activity . . . ." Not so. The evidence clearly supports the conclusion that defendant had already finished contemplating "whether" and had fixed on the "where." He had decided to engage in sexual activity with Jazzzyjen as soon as possible after his arrival at the shopping center. According to his own description of what he intended, the sexual activity would actually commence in his car and continue at Jazzzyjen's home, which he believed to be only a couple of blocks away.

Moreover, the fact defendant carried with him no "sexual materials" such as sex toys or lubricant in no way undermines the inference he had already commenced his attempt to commit the planned crime. Use of sexual materials is not a required element of engaging in oral copulation. Thus, while a defendant's possession of such materials would certainly be indicative of a present intention to engage in some sexual activity (see *People v. Reed* (1996) 53 Cal.App.4th 389, 395 [defendant arrived at motel to have sex with young girls he expected to find there, with sex toys and lubricating jelly in his possession]), the lack of any does not imply the absence of such intention.

6

Finally, defendant claims that even if his act of driving to the shopping center could be construed as going beyond mere preparation, the question would remain: "preparation for what?" He points out that while there is certainly evidence he and Jazzzyjen had discussed engaging in oral copulation during their chats, that was merely one of the many sexual options covered, making it impossible to know just *which one* he had in mind when he arrived at the shopping center. In defendant's view, "[a]ny inference that [he] took a direct step towards the commission of *any particular act* would constitute speculation." (Italics added.) We reject that view. Contrary to defendant's implication, his apparent intention to also perform other sexual acts with Jazzzyjen when he met with her on August 30, 2007, is not inconsistent with the conclusion he intended to engage in oral copulation. There is no either/or to be decided here. Nor is there any requirement that the prosecutor establish oral copulation was defendant's number one priority of all the sex acts he might have contemplated engaging in that day.

Defendant's own words made it clear that oral copulation featured prominently in the sexual activity he intended to engage in when he drove to the shopping center to meet Jazzzyjen, whom he believed was a 13-year-old girl. Consequently, no speculation was required to deduce that intent, and the evidence was sufficient to establish his culpability for the attempt.

## 2. *Elements of a Violation of Section 288.4, Subdivision (b)*

In count 3, defendant was charged with attempt to violate former section 288.3, subdivision (b). Effective October of 2007, just shortly after defendant committed the acts at issue in this case, the statute was renumbered to section 288.4 without substantive change. To avoid confusion, we will refer to the statute as it is currently numbered: i.e., section 288.4.

Defendant contends the instruction given to the jury in connection with this count did not accurately reflect the elements of a violation of section 288.4, subdivision

7

(b), and thus that his conviction on the count must be reversed.  We agree with the former contention, but not the latter.

Section 288.4 provides in pertinent part as follows:  "(a)(1) Every person who, motivated by an unnatural or abnormal sexual interest in children, arranges a meeting with a minor or a person he or she believes to be a minor for the purpose of exposing his or her genitals or pubic or rectal area, having the child expose his or her genitals or pubic or rectal area, or engaging in lewd or lascivious behavior, shall be punished by a fine not exceeding five thousand dollars ($5,000), by imprisonment in a county jail not exceeding one year, or by both the fine and imprisonment.  [¶] . . . [¶] (b) *Every person described in paragraph (1) of subdivision (a) who goes to the arranged meeting place at or about the arranged time*, shall be punished by imprisonment in the state prison for two, three, or four years."  (Italics added.)

Thus, the main crime is defined in subdivision (a) of the statute, and its elements are:  1) the defendant arranged a meeting with minor or person believed to be a minor; 2) in doing so, the defendant was motivated by unnatural or abnormal sexual interest in minors; and 3) the purpose of the meeting was to engage in specified improper acts or lewd or lascivious behavior.  That crime is punishable by a fine and by imprisonment of up to one year.  Subdivision (b) of the statute, which is what defendant was charged with attempting to violate in count 3, *adds an element* to the offense already described in subdivision (a).  It states that when the person who commits a violation of subdivision (a) *also* goes to the arranged meeting place at roughly the appointed time, the applicable punishment is increased.

Unfortunately, the instruction given to the jury with respect to count 3 focused almost entirely on defendant's attempt *to attend the arranged meeting* – the added element under subdivision (b) of the statute – rather than on the main crime, which is *arranging the meeting* with a minor for improper purposes.  Specifically, the court informed the jury that "[t]he defendant is charged in Count 3 with attempting to go to an

8

arranged meeting place to meet the person he believed to be a minor for the purpose of engaging in lewd and lascivious behavior . . . . [¶] To prove the defendant guilty of this crime, the People must prove that: [¶] 1. The defendant *willfully went to an arranged meeting place* to meet with a person the defendant believed to be a minor; and [¶] 2. *When the defendant went to the meeting place*, he did so with the specific intent of engaging in lewd or lascivious behavior with a person he believed to be a minor." (Italics added.)

Thus, the instruction given to the jury misstates the elements of the crime described in section 288.4 in two significant respects. First, it does not require the jury to find defendant *arranged the meeting.* And second, it does not require the jury to ascertain defendant's intent and motivation *at the time he arranged the meeting*. These are elements of the crime set forth in subdivision (a) of the statute, and only after the elements of that crime are established, could the jury also be asked to find that defendant, a "person described in paragraph (1) of subdivision (a)" went "to the arranged meeting place at or about the arranged time" (§ 288.4, subd. b), thus fulfilling all of the elements of the crime he was charged with attempting in count 3. Consequently, the instruction given to the jury on that count was error. (*People v. Mil* (2012) 53 Cal.4th 400, 409 [court has a sua sponte obligation to instruct on all the elements of a charged offense].)

But determining the instruction was erroneous does not end our inquiry. As defendant acknowledges, such an error does not require reversal of the conviction if we determine it was harmless beyond a reasonable doubt. (*People v. Mil, supra*, 53 Cal.4th at p. 410.) That is the case here. First, defendant himself admitted it was he who engaged in the sexually explicit Internet chats with Jazzzyjen, during which their meeting was arranged. Consequently, it is undisputed he arranged the meeting. And second, there is simply no evidence from which the jury might have reasonably inferred that defendant arranged the meeting with any intention other than to engage in lewd and

9

lascivious acts with Jazzzyjen. Stated plainly, defendant talked of *nothing else* in the chats with Jazzzyjen (whom it bears repeating was not actually a real teenage girl, but a police detective engaged in a sting operation.) Perhaps if defendant had some real relationship with an actual 13-year-old girl, and if their conversations had ever included significant discussion about their shared interest in (for example) hiking, shopping, board games or dining out – as alternatives to their shared interest in engaging in sexual acts – defendant could persuasively argue it was not absolutely clear what he had in mind when he arranged to meet with that girl. But that is not the case here. There can be no doubt defendant's intention was to engage in lewd and lascivious acts when he arranged to meet with Jazzzyjen.

And finally, we reject defendant's contention that the error cannot be deemed harmless, merely because he *disputed* the prosecutor's assertions that he had an abnormal sexual interest in minors and that he had actually *believed* Jazzzyjen was 13 years old. The jury necessarily found against him on both those points when it convicted him on count 1, which charged him with attempted lewd and lascivious conduct on a minor under the age of 14. Under these circumstances, there can be no doubt that if this jury had been properly instructed on the elements of a violation of section 288.4, subdivision (b), it would have nonetheless convicted defendant on the charge of attempting to commit that offense. The error was harmless.

*3. Whether Crime of Attempted Violation of Section 288.2, Subdivision (a), is Overbroad*

Next defendant asserts his convictions on counts 4-6 must be reversed because the crime charged in each of those counts, *attempting to* distribute, send or exhibit "any harmful matter, as defined in Section 313, to a minor with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of that person or of a minor, and with the intent or for the purpose of seducing a minor," (§ 288.2, subd. (a)) is overbroad in violation of the First Amendment to the United States Constitution.

10

Defendant first acknowledges that the crime *defined by* section 288.2, subdivision (a), while content based, is narrowly tailored to advance a compelling state interest, which is the protection of minors, because it only punishes the actual distribution of harmful materials *to minors*. We agree. (See *People v. Hsu* (2000) 82 Cal.App.4th 976, 983-984.) But, he argues, to punish the mere attempt to violate that statute sweeps up those offenders, like him, who actually distributed their questionable material *to another adult*. He claims the punishment of such adult communications, based on their content, sweeps too broadly, and thus improperly interferes with his constitutionally protected freedom of expression.

We disagree. *People v. Hsu, supra* 82 Cal.App.4th 976, is factually on point. There too, the defendant was actually convicted of an *attempt* to violate section 288.2, subdivision (a), with the flaw in his seduction plan also being the fact he was actually communicating with a police detective, rather than the minor he supposed. The conviction was upheld. In rejecting the defendant's claim the statute was overbroad, the *Hsu* court focused on the fact that culpability under the statute turns on defendant's wrongful intent in distributing the materials to someone he believed was a minor, and thus does not implicate the intended distribution of such materials to other adults: "section 288.2, subdivision (b), . . . was tailored so that the offense was restricted to the transmittal of the proscribed material with the double intent of arousing the minor's sexual desire and seducing the minor, *thereby ensuring that adult-to-adult communication was undeterred*." (*Id*. at p. 989, italics added.) The opinion in *Hsu* does not reveal that the appellant made the exact point defendant makes here – i.e., that criminalizing a mere attempt to violate the statute can have the effect of punishing communications between adults, but the point does not materially affect the analysis. That the person defendant *believed* to be a minor was actually an adult changes nothing, because defendant's conviction still rests on the fact that what he was *attempting to do* was distribute the material to a minor, with the intention of seducing *the minor*.

11

Prohibiting such attempts to seduce minors does not interfere with anyone's ability to send whatever they like to someone they reasonably believe to be an adult.

*4. The $200 Fine*

Defendant also challenges the court's imposition of a $200 fine against him. He claims the court imposed the fine pursuant to section 288, which authorizes a fine of up to $10,000 "[u]pon the conviction of any person for a violation of subdivision (a) or (b) [of the statute]" (§ 288, subd. (e)), and argues this was error because he was not convicted of *violating* the statute. His was merely an attempt.

But, as the Attorney General points out, the general attempt statute, section 664, provides that when a defendant is convicted of attempting to commit a crime which is punishable by fine, "the offender convicted of that attempt shall be punished by a fine not exceeding one-half the largest fine which may be imposed upon a conviction of the offense attempted." (§ 664, subd. (c).) And one-half of the largest fine authorized by section 288 is $5,000, which is well above the $200 fine imposed here. The court did not err.

*5. Correction of the Minute Orders*

Defendant's final contention is that two of the court's minute orders are erroneous, one because it does not accurately reflect the charges defendant was convicted of and the other because it does not accurately reflect the court's oral pronouncement of judgment. The Attorney General agrees the orders are both inaccurate and must be corrected. We consequently remand the case for the limited purpose of directing the trial court to do so. Specifically, the court is directed to: (1) correct its minute order dated May 15, 2012, to reflect the jury found defendant guilty of only an *attempted* violation of section 288.3, subdivision (b), as charged in count 3; and (2) correct its minute order dated June 20, 2012, to reflect that on each of counts 4-6, defendant was sentenced to the

lower term, halved on account of his offenses being only attempts, and that he was assessed a fine of only $200, rather than $300.

DISPOSITION

We remand the matter to the trial court with directions to amend its minute orders dated May 15, 2012, and June 20, 2012, as specified herein.  In all other respects, the judgment is affirmed.


RYLAARSDAM, ACTING P. J.

WE CONCUR:


ARONSON, J.


IKOLA, J.

13