Filed 11/15/24  P. v. Naranjo CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E081983 |
| v. | (Super.Ct.No. RIF2201705) |
| ALBERT JOHNATHAN NARANJO, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Timothy J. Hollenhorst, Judge.  Affirmed.

Heather E. Shallenberger, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Heather M. Clark, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury convicted Albert Jonathan Naranjo of numerous offenses, including one count of attempted lewd and lascivious conduct with a child under age 14. (Pen. Code, §§ 288, subd. (a) (§ 288(a)), 664; unlabeled statutory references are to this code.) On appeal, Naranjo challenges the sufficiency of the evidence supporting the conviction on that count. We affirm.

BACKGROUND

Sergeant Liam Doyle testified at trial. He oversees the Riverside County Child Exploitation Team for the Riverside County District Attorney's Office, which is tasked with investigating crimes committed against minors on the internet and people who sexually exploit children.

In March 2022, Doyle conducted an undercover operation in which he pretended to be a father offering his child to others to be sexually abused. On March 18, Doyle posted an ad on Craigslist in a group called "Activity Partners," which is primarily used by people interested in meeting sexual partners. The subject line of the ad stated, "'Dad here,'" and the content read: "'Looking for like-minded dads or uncles looking to talk with and meet. I have great school pics to trade.'" Doyle explained that he mentioned school photographs because people interested in sexually abusing children commonly use such language to refer to child pornography.

A man later identified as Naranjo responded to the ad on the same day that Doyle posted it. Naranjo wrote, "'I'm looking to trade.'" The men initially communicated via randomly generated Craigslist emails and then exchanged cell phone numbers and texted

one another.  Naranjo eventually gave Doyle his personal email.  Doyle told Naranjo that his name was Mike and that his daughter was named Destiny.  Doyle and Naranjo communicated for about five hours on the day that Doyle placed the ad.

Doyle asked Naranjo what he was "'looking to trade.'"  Naranjo said that he "'wanted to trade some pics,'" to which Doyle replied, "'Do you have original content?  Mine is 12 years old.'"  Doyle explained that in the "world of child exploitation," "'original content'" means child pornography that has not been widely shared on the internet and of which law enforcement is not yet aware.  Naranjo did not ask what the term meant, signifying to Doyle that Naranjo was someone who was "aware of the lingo" and had a shared understanding of the content.  Naranjo responded, "'I do, but not that young.'"  Naranjo said that he had photographs of someone in their 20s.

With respect to 12-year-old Destiny, Doyle told Naranjo that he was "[l]ooking to share nudes of her or maybe watch her get fucked by an older gentleman.  Not sure that is for you, though."  In direct response to that message, Naranjo asked if Doyle was a law enforcement officer; Doyle denied that he was.  Naranjo indicated that he too was not a law enforcement officer and said "that he would be up for that."  Doyle asked if Naranjo had any children that he could bring, and Naranjo said that he did not but "'wished he could.'"

Doyle told Naranjo that his "participation was up to him and that $100 would get him all access," by which Doyle meant that in exchange for $100 Naranjo could "have sex with [Doyle's] child," Destiny.  Naranjo responded "'[o]kay'" and asked to "'see a

3

pic.'" Doyle sent Naranjo a photograph of himself that he manipulated using age regression software and to which he added long hair. Doyle told Naranjo that he had taken the photograph from the vantage point of being "'on top'" of Destiny. Naranjo responded, "'Beautiful. So how can we set this up'?" The two men began making plans to meet. Naranjo then asked, "'If I am able to bring a trade, would we be square'?" Naranjo clarified that he meant that he would bring his 13-year-old niece for Doyle. Doyle asked Naranjo if he had previously had sex with his niece, and Naranjo responded that he had the previous year. Doyle asked Naranjo if he would be able to bring his niece with him to the meeting, and Naranjo responded, "'I'm not sure, but I'm going to try. Is that something you would like to fuck her'?" Doyle responded, "'Yeah, if she comes, you don't have to pay.'" Doyle asked Naranjo if his niece was on school break the following week, and Naranjo answered, "'I think so. If not, she'll miss. So yours is okay with me fucking her'?" Doyle responded, "'Yes. She loves new dick. What about yours'?" With respect to his niece, Naranjo told Doyle, "'I'm not sure, but she does love dick.'" The men scheduled a meeting for the following week.

Naranjo sent Doyle a photograph of his niece that appeared to be from a social media post. Doyle believed that the photograph depicted a female between 16 and 20 years old. Doyle told Naranjo that his niece was "'hot,'" and Naranjo responded, "'The pussy is amazing.'" Doyle asked for another photograph, and Naranjo sent a photograph of the same person wearing a bathing suit. Doyle remarked that Naranjo was "'lucky'" and sent Naranjo a photograph that was supposed to be a full length photograph of

4

Destiny. The photograph was actually of a female police officer taken when she was younger. Naranjo commented, "'Wow. I think you're the lucky one. She looks beautiful. I'm assuming you fucked her. How is that pussy'?"

Doyle asked Naranjo if he had any photographs or video recordings of him sexually exploiting his niece. Naranjo responded, "'I had some but I got rid of them. What about you? I would like to see them if possible.'" Naranjo asked Doyle for details about his sexual relationship with Destiny, including how often Doyle "'fuck[ed] her'" and how old she was when they first engaged in certain sexual acts, such as intercourse and oral sex. Naranjo asked Doyle for more photographs of Destiny, specifying that he wanted images of "'[f]ucking or whatever, something I can whack to,'" by which Doyle explained that Naranjo wanted explicit content to look at while masturbating. Doyle explained that he did not have any images of him "'fucking her'" but told Naranjo that he would allow him to "'make one of her next week.'" Naranjo responded, "'Cool, or a nude one.'" Doyle told Naranjo that he could not find any on his phone but said he might have some at home. Naranjo told Doyle to email him if something changed. Doyle in turn asked Naranjo to text him when he had additional information about his niece. Naranjo asked for another photograph of Destiny, and Doyle sent another computer-generated and manipulated photograph of himself.

Two days later, on March 20, 2022, Naranjo emailed Doyle that his niece was going to be out of town for spring break, so Naranjo would not be able to bring her to the meetup. Doyle responded, "Okay. Then you have to pay." Naranjo assured Doyle that

5

he wanted to meet.  The men discussed their availability and eventually agreed to meet at a public location—the parking lot of a particular Taco Bell—where they would "feel each other out, exchange the money, and then at that time . . . proceed back to [Doyle's] home to engage in the sexual acts with the minor."

Naranjo emailed Doyle on the morning of the scheduled meeting to confirm that the meeting was happening.  Doyle told Naranjo that he needed to bring the money to the parking lot.  Naranjo again asked Doyle for explicit images of Destiny.  Doyle told Naranjo that he had nude images of Destiny on a website, and he sent Naranjo a link.  The website was fake, and the link was designed not to work.  Naranjo contacted Doyle to tell him that the link was broken, so Doyle sent Naranjo fake login credentials.  Naranjo clicked the link and attempted to access the nude photographs.  Doyle was notified every time the link was clicked.

At the arranged meeting time, Naranjo contacted Doyle and told him that he had arrived at the location in a white truck.  Doyle and the other law enforcement officers conducting surveillance of the location did not see a white truck.  Doyle called Naranjo and learned that Naranjo was in the parking lot of a different Taco Bell about 15 minutes away.  Naranjo said that he would drive to the correct location but also asked if they could meet at Doyle's house instead.  Doyle responded, "'No, no, I want, no I want to make sure you have the money.  That's why I'm, that's why we're going to meet at Taco Bell,'" to which Naranjo answered, "Oh, okay."

6

Naranjo called Doyle when he was driving to the correct Taco Bell and asked, "[I]s she with you?" Doyle said that she was not. Naranjo said that he was nervous because he was almost there and noticed law enforcement officers on nearby side streets. Doyle reassured Naranjo that he was not a law enforcement officer. Within one or two minutes, Naranjo arrived at the correct Taco Bell after driving around the block a couple of times. When Naranjo pulled into the parking lot, law enforcement officers stopped Naranjo's vehicle and arrested him.

Doyle interviewed Naranjo almost immediately after Naranjo was apprehended. Naranjo denied that he had ever "been with" any "underage girls." Naranjo said that he was there "just to talk" with Mike and denied that he was there to pay to have sex with a 12-year-old. He also denied that he had sex with his niece. Naranjo repeatedly stated, "I knew better." Naranjo admitted that he clicked on the link that Doyle had sent him a "couple times." He also acknowledged that he had $100 with him. Law enforcement found $105 in Naranjo's wallet. Law enforcement obtained access to Naranjo's cell phone and discovered that on the day of the arrest Naranjo used a map application to search for both a credit union and Taco Bell.

Doyle opined that when Naranjo arrived at Taco Bell his intent was "[t]o have sex with a 12-year-old child." Asked what the opinion was based on, Doyle answered: "He showed up. He asked for nude photos. He had the money that was agreed upon. He went from one location to another. From one Taco Bell to the second Taco Bell. Called

me on the phone. Said he was nervous that he had saw law enforcement. There would be no reason to do any of that if the intent was not to have sex with a child."

Naranjo testified. He denied that he ever had sex with any minors. He found Doyle's Craigslist ad while looking for firewood and felt compelled to respond. Naranjo continued talking to Doyle after Doyle said that he wanted to watch someone have sex with his daughter because it upset and triggered Naranjo, who said that he had been molested. All of the explicit things that Naranjo told Doyle were lies to gain Doyle's trust. Naranjo wanted to meet Doyle, whom he believed to be "a real child molester," to "hurt him" and "to stop him." Naranjo asked Doyle to send explicit photographs of his 12-year-old daughter to ensure that Doyle was not a law enforcement officer, because Naranjo did not want to go to prison for assaulting a law enforcement officer. Naranjo claimed that he did not intend to have sex with Doyle's 12-year-old daughter.

## DISCUSSION

Naranjo challenges the sufficiency of the evidence supporting the conviction for attempted lewd and lascivious conduct with a child under 14 years old. He contends that there is insufficient evidence that he committed any act beyond mere preparation. We disagree.

In order to prove an attempted violation of section 288(a), "the prosecution has the burden of demonstrating (1) the defendant intended to commit a lewd and lascivious act with a child under 14 years of age, and (2) the defendant took a direct but ineffectual step toward committing a lewd and lascivious act with a child under 14 years of age."

8

(*People v. Singh* (2011) 198 Cal.App.4th 364, 368.) "The crime of a lewd or lascivious act upon a child requires a touching of a child under the age of 14 with the specific intent 'of arousing, appealing to, or gratifying the lust, passions, or sexual desires' (§ 288, subd. (a)) of the defendant or the child." (*People v. Davis* (2009) 46 Cal.4th 539, 606 (*Davis*).) "An attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission." (§ 21a; *Davis*, at p. 606.)

"Mere acts in preparation for a crime do not constitute an attempt." (*People v. Reed* (1996) 53 Cal.App.4th 389, 398.) The act "'must show that the perpetrator is putting his or her plan into action, but the act need not be the last proximate or ultimate step toward commission of the substantive crime.'" (*People v. Clark* (2019) 43 Cal.App.5th 270, 287.) "When a defendant's intent is '"clearly shown, slight acts done in furtherance of that design will constitute an attempt, and the courts should not destroy the practical and common-sense administration of the law with subtleties as to what constitutes preparation and what constitutes an act done toward the commission of a crime.'"" (*Davis*, *supra*, 46 Cal.4th at p. 606; *People v. Memro* (1985) 38 Cal.3d 658, 698-699, overruled on another ground in *People v. Gaines* (2009) 46 Cal.4th 172, 181, fn. 2; *People v. Garton* (2018) 4 Cal.5th 485, 510 (*Garton*).) "In the face of such manifest intent, 'an act done toward the commission of the crime may be sufficient for an attempt even though that same act would be insufficient if the intent is not as clearly shown.'" (*People v. Weddington* (2016) 246 Cal.App.4th 468, 478.) In other words, "the plainer

the intent to commit the offense, the more likely that steps in the early stages of the commission of the crime will satisfy the overt act requirement." (*People v. Dillon* (1983) 34 Cal.3d 441, 455; *Weddington*, at p. 478.)

"In reviewing a sufficiency of the evidence claim, our role is limited. We review the entire record to determine whether it discloses reasonable and credible evidence to allow a rational trier of fact to determine guilt beyond a reasonable doubt." (*People v. Cardenas* (2020) 53 Cal.App.5th 102, 119, fn. 11.) "We draw all reasonable inferences in favor of the judgment." (*Ibid.*) "Matters of credibility of witnesses and the weight of the evidence are ""'the exclusive province'"" of the trier of fact." (*Ibid.*)

There is overwhelming evidence that Naranjo intended to touch a child under age 14 with the specific intent of being aroused or gratifying his "lust, passions, or sexual desires" in violation of section 288(a). Naranjo's communications with Doyle established that Naranjo agreed to pay Doyle $100 in order to have sexual intercourse with Doyle's 12-year-old daughter. Naranjo asked Doyle if the minor was "okay with [Naranjo] fucking her." Naranjo initiated the plan to "set this up," repeatedly asked Doyle for explicit photographs of the minor, told Doyle that he wanted to masturbate to those images, and repeatedly clicked on a link to see nude photographs of the supposed 12-year-old on the day of the scheduled meeting. Moreover, Naranjo had $105 in his wallet when he was arrested at the location where the men planned to meet to exchange money before going to Doyle's house, where Naranjo was told the minor was located. Taken together, those facts provide overwhelming support for the jury's finding that

Naranjo intended to commit a lewd and lascivious act with a child under the age of 14 in violation of section 288(a).

Because of the strength of the evidence of Naranjo's intent, any "slight acts done in furtherance of that design will constitute an attempt." (*Davis*, *supra*, 46 Cal.4th at p. 606; see also *Garton*, *supra*, 4 Cal.5th at p. 510 ["Because there was clear evidence of [the defendant's] intent to murder [the victim], we review his actions in California under the slight acts rule"].) The evidence is sufficient to meet that standard, showing that Naranjo's acts went beyond mere preparation and constituted direct but ineffectual acts toward committing the offense. Naranjo agreed to meet Doyle at a Taco Bell parking lot in order to pay Doyle $100 to have sexual intercourse with Doyle's supposed 12-year-old daughter, who was believed to be waiting at a nearby location to which Naranjo would be taken after he paid Doyle. On the day of the planned meeting, the search history on a map application on Naranjo's cell phone revealed that he looked for a bank and a Taco Bell. The jury could infer that Naranjo went to a bank to withdraw the necessary funds before going to Taco Bell. After initially going to the wrong location, Naranjo arrived at the agreed location with over $100 in his wallet, even though he was nervous about law enforcement presence nearby. In light of the overwhelming evidence of Naranjo's intent to engage in lewd and lascivious conduct with a 12-year-old, Naranjo's act of arriving at the agreed time at the agreed location with the agreed amount of money to pay Doyle to have sexual intercourse with a minor constitutes sufficient evidence that Naranjo took

11

direct but ineffectual steps, beyond mere preparation, toward committing a lewd and lascivious act with a minor. (*Davis*, at p. 606.)

Naranjo's arguments to the contrary are unavailing. He contends that his act did not go beyond mere preparation because he was arrested immediately upon entering the parking lot and did not give Doyle $100. He contends that before making the payment his intent "was equivocal," because "[h]e could have exited his car and hit Mike, exited his car and paid Mike, or could have stayed in his car and driven away." More broadly, he contends that "[e]very act committed before [he] met Mike and paid the fee was, therefore, preparatory."

We disagree. "'"Commission of an element of the underlying crime other than formation of intent to do it is not necessary. [Citation.] Although mere preparation such as planning or mere intention to commit a crime is insufficient to constitute an attempt, acts which indicate a certain, unambiguous intent to commit that specific crime, and, in themselves, are an immediate step in the present execution of the criminal design will be sufficient."'" (*People v. Herman* (2002) 97 Cal.App.4th 1369, 1385-1386.) Given the powerful evidence of Naranjo's intent, his act of going to the agreed location at the agreed time carrying the agreed amount of cash to pay Doyle to have sex with Doyle's 12-year-old daughter is more than sufficient to meet that standard. Only "slight acts done in furtherance of" the criminal enterprise were needed, because the evidence of Naranjo's intent was so strong. (*Davis*, *supra*, 46 Cal.4th at p. 606; *Garton*, *supra*, 4 Cal.5th at p. 510.)

For the foregoing reasons, we conclude that the attempted lewd and lascivious conduct conviction is supported by substantial evidence.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
J.

We concur:

RAMIREZ
P. J.

McKINSTER
J.

13