Filed 7/14/23  P. v. Bassett CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CLYNTON BLEAU BASSETT,<br><br>Defendant and Appellant. | C096388<br><br>(Super. Ct. No. MAN-CR-FE-2021-0003820) |

Defendant Clynton Bleau Bassett answered an online advertisement offering sex for money, which was posted by Special Agent Allison Reuter with the Department of Justice as part of a sting operation.  Defendant exchanged text messages with Special Agent Reuter, and then with Special Agent Michael Campbell, both of whom pretended to be a 13-year-old girl.  While defendant initially said he would have to decline the offer due to her age, he nevertheless asked for photos, received photos of Reuter in return, and ultimately agreed to meet and pay her for sex.  Defendant was arrested when he arrived at the location set for the meeting with cash, condoms, and a bottle of vodka.

1

A jury convicted defendant of one count of attempted lewd or lascivious conduct with a child under the age of 14 years (Pen. Code, §§ 664, 288, subd. (a))[1] and one count of contact with a minor with the intent to commit a sexual offense, the latter crime encompassing an attempt to make such contact as within the statutory definition of the offense (§ 288.3, subd. (a)). The trial court suspended the imposition of the sentence and placed defendant on formal probation for a period of four years, subject to various terms and conditions.

On appeal, defendant contends: (1) the evidence is insufficient to support his convictions because (A) the photos he received of Special Agent Reuter obviously depicted an adult woman and not a minor, and (B) the prosecution did not prove he took a direct but ineffectual step towards committing either offense; (2) the trial court prejudicially erred and violated defendant's federal constitutional rights by (A) providing a bracketed portion of CALCRIM No. 358 telling the jury to view inculpatory statements made by a defendant with caution unless the statements are in writing or otherwise recorded, and (B) refusing to instruct the jury on the defense of entrapment; (3) the cumulative prejudicial impact of the foregoing assertions of error requires reversal; and (4) a probation condition ordering defendant to seek and maintain employment must be stricken.

We affirm. As we explain, the evidence is more than sufficient to support defendant's convictions. Defendant's first claim of instructional error is forfeited, and in any event, manifestly harmless. His second claim of instructional error lacks merit. There is, therefore, no cumulative prejudice to assess. And the challenged probation condition is neither unconstitutional nor unreasonable.

---

[1]     Undesignated statutory references are to the Penal Code.

BACKGROUND

In April 2021, Special Agent Reuter posted an online advertisement offering sex for money as part of a sting operation designed to find and apprehend people seeking out sex with underage girls. The advertisement was titled: "NEW new CUTEE n yung ALL u nEeD dnt Miss Ouut ReDy 2 Play."[2] The advertisement indicated her name was Steph, she was 21 years old, and was offering the following services: "FS BB BBBJ GFE GREEK RP PSE !!!!" Reuter testified to the meaning of these abbreviations: "FS, stands for, 'full service,' which includes oral and or penetrative sex. BB, stand[s] for, 'bare back,' which means no condom. BBBJ, means, 'bare back blow job,' which means a blow job without a condom. GFE. Stands for, 'girlfriend experience,' which indicates an experience in which the woman would pretend to be the buyer's girlfriend and give him affection and cuddle, that kind of thing. Greek refers to anal sex. RP, stands for 'role play.' PSE stands[] for, 'porn star experience.' " While it was Reuter's intention to pose as a juvenile, the website she used to post the advertisement would not allow her to select an age younger than 21 years. The advertisement also included three photos of Reuter, which she took of herself in a hotel bathroom. Her face is obscured in each photo, by her phone in the first two and by a heart emoji in the third. The telephone number listed in the advertisement was for a decoy phone used by agents working the operation.

Defendant responded to the advertisement at about 12:30 a.m. the next day, texting the decoy phone: " 'You available?' "[3] Later in the day, Special Agent Reuter

---

[2] All quotations from this advertisement are set forth verbatim, with spellings and capitalizations as existing in the original; emojis are omitted.

[3] Because the testimony regarding the text message exchange between defendant and Special Agents Reuter and Campbell is easier to read than the text messages themselves, we quote primarily from the testimony. We have, however, compared the testimony to the actual messages to ensure the accuracy of the content, if not spelling and punctuation.

3

responded: " 'Hi,' smiley face. 'Sorry, baby. Bout to go on fam camping trip. Lol. Will be in Stockton on Mond,' as in Monday, 'for some fun after school.' Kissie face emoji." Defendant replied: " 'Okay.' "

Because the advertisement received hundreds of responses over the weekend, the agents working the operation divided up communication with the various interested parties. Special Agent Campbell was assigned to engage in further communication with defendant.

At about 7:00 p.m. on Monday, Special Agent Campbell sent defendant a text message asking: " 'Hey baby, you still interested?' " Defendant immediately responded: " 'In two hours.' " Campbell asked: " 'You want FS, baby?' " Again, "FS" means " 'full service,' " indicating both oral and vaginal sex. Defendant responded: " 'How much?' " And, " 'What do you look like?' " Campbell answered: " 'Young and cute. No hair. You like young. I do $100 for full service. But I do cheaper if you bring alcohol. Cause I can't buy yet.' " Defendant responded: " 'Okay. I can do that. What do you want?' " and then: " 'Age don't matter as long as you're over 18.' " Campbell answered: " 'I like goose,' " referring to Grey Goose vodka, " 'and I 13. So I need a ride too, okay baby.' " Defendant responded: " 'You're 13?' " and then: " 'Or 18.' " Campbell answered: " 'Yes. Why I charge more. Because 13. What's problem? You don't like girls?' "

Notwithstanding this information, defendant texted: " 'Send me a pic of yourself, please.' " Defendant then said, in apparent response to the question about whether he liked girls: " 'Not if you're 13.' " Special Agent Campbell responded: " 'I'm almost 14, baby, that okay?' " Defendant again asked for a picture: " 'Send me a selfie.' " He then said: " 'No. Sorry. If you're 13, I have to pass.' " Campbell responded: " 'You want selfie or not?' " Defendant answered: " 'Send me one.' " Campbell offered to send defendant a photo, but only if he was serious about "$$$$," meaning paying for sex. Defendant responded: " 'And if you're that young, I have to pass.' " Campbell asked

4

how a picture would change that, to which defendant replied: " 'Okay. It doesn't. Good-bye.' " Campbell responded: " 'Your loss.' " Defendant apologized: "Sorry. You are just too young." Campbell replied: " 'Fine.' W-E, indicating, 'whatever.' "

This could have been the end of the matter. But instead, about a minute later, defendant sent another text message to the decoy phone: " 'Where are you located?' " Special Agent Campbell said the fictional 13-year-old girl was in Lathrop and asked if defendant was still interested. Defendant again asked for a photo. Campbell sent defendant a photo of Special Agent Reuter, which was also taken in the hotel bathroom before the operation began, but was not posted as part of the online advertisement. Defendant responded that he would text to meet in two hours, asked what motel she was at, asked her to confirm she was not a cop, and added: " 'You are cute!' " Campbell replied: " 'No. Are you? Fuck cops,' with a 100 emoji." Defendant also confirmed he was not a cop and said: " 'See you in two hours.' " Campbell asked: " 'You serious now? I can sneak out tonight. You serious about' – dollar signs, indicating money, 'and alcohol baby?' " Defendant answered: " 'Yup' " and " 'I'll text you around 9:00.' " Campbell again asked defendant to confirm that he was serious, adding: " 'Because I got to sneak out if we do tonight.' " Defendant again responded: " 'Yup.' " Campbell asked: " 'Okay. Baby, can you bring condoms too?' " Defendant again answered: " 'Yup.' "

Special Agent Campbell and defendant then agreed that defendant would pick up the fictional child in Lathrop after 9:00 p.m. and text when he was close. Campbell asked defendant for a photo, " 'so I know you're serious,' " prompting defendant to send a picture of his car, a white Chevy Camaro. Defendant also sent a picture of himself. Between 8:24 p.m. and 9:20 p.m., Campbell sent three text messages to defendant indicating that the 13 year old was ready to sneak out whenever he was close. Defendant responded about 40 minutes later with: " 'Be there soon' " and, " 'Where do I pick you up?' " However, because the operation was ending for the day, Campbell responded:

5

" 'Can't sneak out anymore.  Can you do tomorrow instead?' " and, " 'You took too long, baby.  Can't get out of house anymore.  Was ready before.' "

The next morning, Special Agent Campbell texted defendant:  " 'Hey baby.  You going to be serious today?' "  Campbell told defendant that school got out at 3:00 p.m., adding:  " 'Hit me when you're ready for me.' "  Defendant responded:  " 'Okay.' " About two hours later, defendant sent another text:  " 'Where would I pick you up?' " Campbell answered:  " 'Can you pick me up in Lathrop, baby?' "  Defendant again responded:  " 'Okay.' "  They again agreed that defendant would pick up the purported 13 year old after she snuck out of her house, this time around 6:00 p.m.  Defendant also asked:  " 'Can you take a selfie right now and send it to me?' "  Campbell sent another photo of Special Agent Reuter, this one a close-up selfie with a flower emoji covering most of her face.  Defendant responded:  " 'Thanks.' "

That evening, at 5:22 p.m., defendant texted the decoy phone:  " 'Where do you want me to pick you up?' "  At 6:06 p.m., he texted:  " 'Are we doing this?' "  Special Agent Campbell responded about a minute later:  " 'Yes, baby.  Just got done with school and chores and waiting for mom to leave.' "  Defendant replied:  " 'Okay' " and, " 'What did you want to drink?' "  Campbell answered:  " 'I like Grey Goose.  Maybe bring condoms too, if you can.' "  Defendant responded:  " 'Okay.' "  At 6:33 p.m., defendant texted:  " 'Can I start driving towards you?' "  He then indicated he was waiting at a gas station off of Lathrop Road and Highway 99.  At 6:47 p.m., defendant texted: " 'Hello.' "  At 7:03 p.m., he texted:  " 'What happened?' "

During this time period, Special Agent Campbell and other agents and officers, including Special Agent Reuter, were selecting a location and getting ready to meet and arrest defendant.  At 7:04 p.m., Campbell responded to defendant's texts:  " 'Sneaking out right now, baby.  Hang on, see you soon.' "  Campbell explained:  " 'Got in a little trouble with my mom.  But she is leaving now.  So it is all good.' "  Campbell then told defendant to meet the 13-year-old girl he was portraying at a park near Lathrop High

6

School and provided the address. Defendant responded that he was eight minutes away. At this point, Campbell handed the decoy phone to Reuter, who would be acting as the in-person decoy, waiting for defendant at the park, while Campbell and the other officers waited in a car to make the arrest.

At 7:27 p.m., Special Agent Reuter texted defendant: " 'KK baby. I am here by the flagpole.' " Defendant responded: " 'Okay' " and, " 'Almost there honey. I am by the freeway.' " A few minutes later, defendant arrived in his white Camaro. He was contacted in his car and detained. As officers took defendant into custody, Reuter called the phone number she and Special Agent Campbell had been texting. The call was received by defendant's phone. Inside defendant's car, officers found $80 in cash, a box of condoms, and an unopened bottle of Grey Goose vodka.

DISCUSSION

I

*Sufficiency of the Evidence*

Defendant contends the evidence is insufficient to support his convictions for attempted lewd or lascivious conduct with a child under the age of 14 years (§ 288, subd. (a)) and contact with a minor with the intent to commit a sexual offense (§ 288.3, subd. (a)). He is mistaken.

"In determining the sufficiency of the evidence to support a conviction, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.] '[T]he court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.] Moreover, ' "[a] judgment of conviction will not be set aside for insufficiency of the evidence to support the jury's verdict unless it is clearly shown there is no basis on

7

which the evidence can support the conclusion of the jury.  The credibility of witnesses and the weight to be accorded to the evidence are matters to be determined by the trier of fact.  [Citations.]" ' [Citation.]  Reversal of the judgment is not warranted even if we might have made contrary findings or drawn different inferences, as it is the trier of fact, not the appellate court, that must be convinced beyond a reasonable doubt.  [Citation.]" (*People v. Singh* (2011) 198 Cal.App.4th 364, 368.)

Defendant was convicted of attempted lewd or lascivious conduct with a child under the age of 14 years, which requires proof that "(1) the defendant intended to commit a lewd [or] lascivious act with a child under 14 years of age, and (2) the defendant took a direct but ineffectual step toward committing a lewd [or] lascivious act with a child under 14 years of age." (*People v. Singh, supra*, 198 Cal.App.4th at p. 368.) In turn, the offense of lewd or lascivious conduct "has two elements:  ' "(a) the touching of an underage child's body (b) with a sexual intent." [Citation.]' [Citation.]" (*People v. Villagran* (2016) 5 Cal.App.5th 880, 890; § 288, subd. (a) ["a person who willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony"].)  Thus, in order to sustain his conviction, there must be substantial evidence that defendant intended to touch, or cause to be touched (see *People v. Austin* (1980) 111 Cal.App.3d 110, 114-115), a child under 14 years of age, with sexual intent, and took a direct but ineffectual step towards doing so.

Defendant was also convicted of contact with a minor with the intent to commit a sexual offense.  The statutory definition of this offense encompasses an attempt to make such contact:  "Every person who contacts or communicates with a minor, *or attempts to contact or communicate with a minor*, who knows or reasonably should know that the person is a minor, with intent to commit [certain enumerated sex offenses] involving the minor shall be punished by imprisonment in the state prison for the term prescribed for an

8

attempt to commit the intended offense." (§ 288.3, subd. (a), italics added.) Thus, "[s]ection 288.3, subdivision (a) makes an attempt to communicate with a minor a completed crime." (*People v. Korwin* (2019) 36 Cal.App.5th 682, 688 (*Korwin*).)

Defendant argues the evidence is insufficient to support either conviction because (A) the photos he received of Special Agent Reuter obviously depicted an adult woman and not a minor, and (B) the prosecution did not prove he took a direct but ineffectual step towards committing either offense. We address and reject each argument in turn.

A.      *Evidence Related to the Fictional Minor's Age*

As defendant correctly observes, both offenses he was convicted of committing have an age element. As previously indicated, defendant's attempted lewd conduct conviction requires proof that he *intended a touching of a child under the age of 14 years* with a further sexual intent. His contact with a minor conviction requires proof that he *intended to contact a minor* with the further intent to commit an enumerated sex offense involving that minor. Defendant also candidly acknowledges that neither offense requires an actual minor victim. (See *Korwin, supra*, 36 Cal.App.5th at p. 688 [violation of § 288.3, subd. (a) "does not actually require a minor victim"]; *People v. Reed* (1996) 53 Cal.App.4th 389, 397 (*Reed*) [same with respect to attempted violation of § 288, subd. (a)].)

Here, the evidence is more than sufficient to support a finding that defendant intended the proscribed act (the touching and the contact) to have been committed upon or with a minor who was under the age of 14 years. While the online advertisement listed the age of the fictional "Steph" as 21 years old, Special Agent Campbell quickly disclosed that the person he was impersonating was a 13-year-old girl. In apparent response to Campbell's question, " 'What's problem? You don't like girls?' " defendant answered, " 'Not if you're 13.' " He also twice said he would " 'have to pass' " on paying a 13 year old for sex. Defendant nevertheless asked for a photo of the child four times before Campbell sent him a photo of Special Agent Reuter. After receiving this

9

photo, defendant agreed to pick up the 13-year-old girl in Lathrop after 9:00 p.m. and text her when he was close so that she could sneak out of her parents' house. Campbell repeated three more times that the child would be sneaking out of the house to meet defendant. This meeting was postponed after 10:00 p.m. because the operation was ending for the night, but the reason given to defendant was that the child could not " 'sneak out anymore' " and defendant " 'took too long' " to respond. The next day, defendant again agreed to pick up the 13-year-old girl after she snuck out of her house, this time around 6:00 p.m. Defendant asked for another photo of the child and received another photo of Reuter. After 6:00 p.m., in response to defendant's text message, " 'Are we doing this?' " Campbell responded: " 'Yes, baby. Just got done with school and chores and waiting for mom to leave.' " It was apparently at this point that defendant picked up condoms and vodka, at the fictional child's request. Then, after a delay in responding to defendant's text messages, Campbell told defendant that the fictional child " '[g]ot in a little trouble with my mom,' " but was " '[s]neaking out right now.' " It was after this, after several references to the child being 13 years old, and at least seven references to the child sneaking out of her parent's house to meet defendant, that defendant drove to the designated location with the condoms and vodka and $80 to pay her for sex.

As in *Korwin, supra*, 36 Cal.App.5th 682, where the defendant was also convicted of both attempted lewd conduct with a child and contact with a minor with intent to commit a sex offense, the foregoing evidence provided defendant with "ample reason to know he was communicating with a minor" even though there was no actual minor involved. (*Id*. at p. 690.) There, the defendant repeatedly acknowledged the girl being impersonated by law enforcement was 13 years old, and after the girl purportedly had a birthday, the defendant acknowledged she was still a minor before arriving at an agreed-upon location with condoms. (*Id*. at pp. 690-691.) Here, too, defendant repeatedly acknowledged the fictional "Steph" was 13 years old. He was also repeatedly told that

10

she had to sneak out of her parent's house to meet him for sex, which was consistent with her being 13 years old. We have no difficulty concluding the evidence is sufficient to support a finding that defendant intended to contact and engage in lewd conduct with a minor under the age of 14 years.

Nevertheless, relying on *People v. Carvalho* (1952) 112 Cal.App.2d 482 (*Carvalho*), defendant argues, "the rule of inherent improbability" requires reversal of his convictions because the two photos he received of Special Agent Reuter, who was 25 years old, makes it inherently improbable that defendant believed she was a minor, let alone a 13-year-old girl. We are not persuaded.

In *Carvalho*, the appellate court reversed a kidnapping conviction as unsupported by substantial evidence, concluding the testimony of the alleged victim was inherently improbable for reasons we need not discuss. (*Carvalho, supra*, 112 Cal.App.2d at pp. 489-490, 493.) Here, defendant points to no testimony he claims to be inherently improbable. Instead, he wants this court to conclude, based solely on the two photos he received of Special Agent Reuter, that it is inherently improbable that he believed he was meeting a 13-year-old girl for sex, adding "if ever there was a case where a picture was worth a 1,000 words, this case is it." For reasons already stated, the jury could have reasonably concluded, based on the text message exchange with Special Agent Campbell, that defendant believed he was communicating with a 13-year-old girl and intended to meet that girl for sex. Whether the photos he received undermined such a conclusion was a matter for the jury, not this court. "Our function is not to determine the weight of the evidence but to decide whether upon the face of the evidence it can be held that sufficient facts could not have been found by the jury to warrant the inference of guilt." (*Carvalho*, at p. 489.) In order to reject a jury's considered judgment as not " 'reasonably' justified by the facts and circumstances disclosed by the evidence," it is not enough to conclude that the "evidence . . . discloses circumstances that are unusual." (*Ibid*.) Instead, we must be convinced that the inference drawn by the jury "would not seem possible

11

. . . under the circumstances." (*Ibid*.) While it might be unusual for a 13-year-old girl to look like the photos of Reuter, who was 25 years old at the time they were taken, we cannot conclude that it would not seem possible for defendant to have believed she was 13 years old.

In sum, notwithstanding the photos defendant received, the jury's finding regarding his intent to contact and engage in lewd conduct with a minor under the age of 14 years is supported by substantial evidence.

B.      *Evidence Related to Defendant's Attempt to Contact and Engage in Lewd Conduct with a 13-Year-Old Girl*

Defendant also argues the evidence is insufficient to support a finding that he took a direct but ineffectual step towards violating either section 288 or section 288.3. We disagree.

" ' "An attempt to commit a crime consists of a specific intent to commit the crime, and a direct but ineffectual act done towards its commission. [Citation.] Commission of an element of the underlying crime other than formation of intent to do it is not necessary. [Citation.] Although mere preparation such as planning or mere intention to commit a crime is insufficient to constitute an attempt, acts which indicate a certain, unambiguous intent to commit that specific crime, and, in themselves, are an immediate step in the present execution of the criminal design will be sufficient. [Citations.]" ' [Citations.]" (*People v. Herman* (2002) 97 Cal.App.4th 1369, 1385-1386 (*Herman*); *People v. Dillon* (1983) 34 Cal.3d 441, 455 ["when the acts are such that any rational person would believe a crime is about to be consummated absent an intervening force, the attempt is underway"].) Moreover, "when ' "the design of a person to commit a crime is clearly shown, *slight acts* done in furtherance of that design will constitute an attempt, and the courts should not destroy the practical and common-sense administration of the law with subtleties as to what constitutes preparation and what constitutes an act done toward the commission of a crime." ' [Citation.]" (*Herman,* at p. 1388.)

12

Here, the evidence clearly establishes defendant's intent to engage in lewd conduct with a minor under the age of 14 years in violation of section 288, subdivision (a). It also clearly establishes his intent to contact that minor for that specific purpose (i.e., engaging in lewd conduct with the minor) in violation of section 288.3, subdivision (a). Indeed, defendant candidly admits his sexual purpose when he contacted "Steph" and arrived at the designated location with condoms, vodka, and cash. And we have already explained that his age-related challenge to his convictions fails. Thus, given the strong evidence of defendant's criminal design, slight acts done in furtherance of that design will amount to a direct but ineffectual step towards the commission of these offenses. (*Herman, supra*, 97 Cal.App.4th at p. 1388.) That standard is satisfied.

With respect to defendant's violation of section 288.3, subdivision (a), while he initially responded to an advertisement that indicated "Steph" was 21 years old, he was quickly informed that she was actually 13 years old, after which defendant continued communication and ultimately agreed to meet and pay her for sex. That continued communication, with the requisite intent, violated the statute. Indeed, the only thing making defendant's text message exchange "attempted" communication with a minor was the fact that there was no actual minor. However, as mentioned, section 288.3, subdivision (a) makes an attempt to communicate with a minor a completed crime and does not require an actual minor victim. (*Korwin, supra*, 36 Cal.App.5th at p. 688.) Defendant's challenge to this conviction therefore fails.

With respect to defendant's attempted violation of section 288, subdivision (a), again, the jury had strong evidence of defendant's intent to violate this statute. He agreed to pick up the fictional 13-year-old girl at a certain location after she snuck out of her parent's house. He agreed to bring condoms and vodka. He agreed to pay her for sex. He then arrived at the designated location to pick up the child with condoms, vodka, and $80 in cash. Arriving with these items "was clearly a step beyond mere preparation for the crime, though it was not an element of the crime." (*Reed, supra*, 53 Cal.App.4th at

13

p. 399.) We conclude the jury could have reasonably found that had "Steph" been an actual 13-year-old girl, the crime would have been carried out as planned, and defendant's arrival at the meeting place with the aforementioned items "was an unequivocal first act in carrying out the intended crime." (*Ibid*.) Defendant's challenge to this conviction also fails.

We finally note that defendant's appellate briefing discusses *Reed* at length. There, as here, while there was no actual minor victim, the defendant arrived at a designated location, a motel room, with the intent to violate section 288, subdivision (a), and with items useful for that purpose. (*Reed, supra*, 53 Cal.App.4th at p. 399.) Those are the relevant similarities. Defendant, however, focuses on the following differences. The defendant in *Reed* intended to molest two fictional children; prior to his arrival at the motel room, he had communicated with an undercover agent posing as the children's mother for a few months; the defendant enthusiastically agreed to meet the children in order to educate them sexually and bragged about having done so in the past; and he arrived at the motel with various sex toys, some of which were small in size. (*Id*. at pp. 393-395.) Defendant argues he did not communicate with Special Agent Campbell for nearly as long as the defendant in *Reed*, his text messages to Campbell did not "gleefully and repeatedly" talk about having sex with children, and also unlike *Reed*, defendant did not arrive at the designated location with "sex toys useful for children of the expected size." We accept these factual differences. "[H]owever, the facts of other cases . . . are not particularly helpful in evaluating the sufficiency of the evidence in this case." (*People v. Rundle* (2008) 43 Cal.4th 76, 140, disapproved on another point in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

Simply put, even if we accept defendant's position that the evidence was stronger with respect to attempted lewd or lascivious conduct in *Reed*, this does not mean that defendant did not also attempt to commit the same crime in this case. It is the evidence

14

in this case that matters. For the foregoing reasons, we conclude the evidence was more than sufficient to support his convictions.

II

*Instructional Error Claims*

Defendant also claims the trial court prejudicially erred and violated his federal constitutional rights by (A) providing a certain bracketed portion of CALCRIM No. 358, and (B) refusing to instruct the jury on the defense of entrapment. The first claim is forfeited, and in any event, manifestly harmless; the second lacks merit.

A.      *Bracketed Portion of CALCRIM No. 358*

The challenged portion of CALCRIM No. 358, as given to the jury in this case, provides: "Consider with caution any statement made by the defendant tending to show his guilt unless the statement was written or otherwise recorded." Defendant did not object to this portion of the instruction. "Failure to object to instructional error forfeits the issue on appeal unless the error affects defendant's substantial rights. [Citations.] The question is whether the error resulted in a miscarriage of justice under *People v. Watson* (1956) 46 Cal.2d 818 . . . . [Citation.]" (*People v. Anderson* (2007) 152 Cal.App.4th 919, 927.) There was no miscarriage of justice.

Although the trial court has a duty to instruct the jury on general principles of law relevant to the issues raised by the evidence, it has a correlative duty to refrain from instructing on irrelevant principles of law that might tend to confuse the jury. (*People v. Alexander* (2010) 49 Cal.4th 846, 920.) "The purpose of the bracketed language in CALCRIM No. 358 is to aid the jury in evaluating whether the defendant actually made the statement. [Citation.] 'The cautionary instruction is concerned with the reliability and credibility of the witness who testifies about the defendant's statements.' [Citation.] No such caution is necessary when the statements are recorded." (*People v. Xiong* (2020) 54 Cal.App.5th 1046, 1079 (*Xiong*).)

15

Here, defendant's statements were recorded in the text message exchange between himself and Special Agents Reuter and Campbell. Nor was there any suggestion at trial that defendant did not send these text messages. Thus, there was no need to instruct the jury to consider these statements with caution and the trial court erred in so instructing the jury.

The error was not prejudicial, however; nor did it violate defendant's federal constitutional rights. Beginning with the latter assertion, defendant argues the bracketed portion of the instruction "effectively lowered the prosecution's burden of proof." We rejected this argument in *Xiong*, explaining, " '[t]he language of the cautionary instruction [in CALCRIM No. 358] does not reference the People's burden of proof or the elements of the offense, or in any other way suggest to jurors that the instruction was meant to create an exception to the rule that all elements of the crime must be proved beyond a reasonable doubt.' [Citation.] The cautionary instruction, given under the circumstances of this case and considered in the context of the instructions as a whole and the trial record, did not ' "so infect[ ] the entire trial that the resulting conviction[s] violate[ ] due process." ' [Citation.] Accordingly, we review this claim of instructional error under the standard set forth in [*People v.*] *Watson, supra*, 46 Cal.2d 818, . . . and inquire whether it is reasonably probable that, but for the error, the jury would have reached a result more favorable to defendant." (*Xiong, supra*, 54 Cal.App.5th at pp. 1081-1082; *People v. Diaz* (2015) 60 Cal.4th 1176, 1188 ["nothing in the wording of the instructions would suggest to a jury that the cautionary instruction was meant to apply in lieu of—rather than in addition to—the reasonable doubt instruction"].)

Turning to the state law standard for assessing prejudice, defendant argues he stated several times during the text message exchange that he had no interest in having sex with a 13-year-old girl, and only agreed to meet the purported child after receiving photos of a 25-year-old woman. According to defendant, the bracketed portion of the instruction "told the jury to not approach the text messages with caution," which the jury

16

would have understood to mean that it did not need to carefully consider the content of those messages, including his stated reluctance to meet a 13-year-old girl for sex. No reasonable juror would have understood the bracketed portion of CALCRIM No. 358 in such an irrational manner. As we have explained, the cautionary instruction warns the jury to consider witness testimony concerning a defendant's inculpatory statements with "caution," i.e., wariness or suspicion, specifically about the possibility that the testimony might not be truthful or accurate. (*Xiong, supra*, 54 Cal.App.5th at p. 1079.) The instruction does not instruct the jury to be careless in their appraisal of recorded statements, as defendant suggests. If anything, the instruction would have benefitted defendant because he wanted the jury to accept his statements regarding his lack of interest in having sex with a 13-year-old girl at face value, and the instruction informed the jury not to view those recorded statements with caution.

In sum, giving the bracketed portion of CALCRIM No. 358 was in error because, while a correct statement of the law, it was not relevant to the issues raised by the evidence. However, as our Supreme Court has explained, "giving an irrelevant or inapplicable instruction is generally ' "only a technical error which does not constitute grounds for reversal." ' [Citation.]" (*People v. Cross* (2008) 45 Cal.4th 58, 67.) That is the case here. Because defendant's substantial rights were not affected by this technical error, defendant's failure to object at trial forfeits the issue on appeal. (*People v. Anderson, supra*, 152 Cal.App.4th at p. 927.) For the same reason, his alternative assertion of ineffective assistance of counsel also fails. (*Strickland v. Washington* (1984) 466 U.S. 668, 695 [80 L.Ed.2d 674] [reversal for ineffective assistance of counsel is warranted only if "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt"].)

B. *Failure to Instruct on Entrapment*

Defendant also claims the trial court prejudicially erred and further violated his constitutional rights by refusing to instruct the jury on the defense of entrapment. Not so.

17

"The trial court was required to instruct the . . . jury on the defense of entrapment if, but only if, substantial evidence supported the defense. [Citations.] In California, the test for entrapment focuses on the police conduct and is objective. Entrapment is established if the law enforcement conduct is likely to induce a *normally law-abiding person* to commit the offense. [Citation.] '[S]uch a person would normally resist the temptation to commit a crime presented by the simple opportunity to act unlawfully. Official conduct that does no more than offer that opportunity to the suspect—for example, a decoy program—is therefore permissible; but it is impermissible for the police or their agents to pressure the suspect by overbearing conduct such as badgering, cajoling, importuning, or other affirmative acts likely to induce a normally law-abiding person to commit the crime.' [Citation.]" (*People v. Watson* (2000) 22 Cal.4th 220, 222-223.)

Our Supreme Court has established two guiding principles for assessing whether police conduct amounts to entrapment: "First, if the actions of the law enforcement agent would generate in a normally law-abiding person a motive for the crime other than ordinary criminal intent, entrapment will be established. An example of such conduct would be an appeal by the police that would induce such a person to commit the act because of friendship or sympathy, instead of a desire for personal gain or other typical criminal purpose. Second, affirmative police conduct that would make commission of the crime unusually attractive to a normally law-abiding person will likewise constitute entrapment. Such conduct would include, for example, a guarantee that the act is not illegal or the offense will go undetected, an offer of exorbitant consideration, or any similar enticement." (*People v. Barraza* (1979) 23 Cal.3d 675, 690.) The *Barraza* court also explained that "while the inquiry must focus primarily on the conduct of the law enforcement agent, that conduct is not to be viewed in a vacuum; it should also be judged by the effect it would have on a normally law-abiding person situated in the circumstances of the case at hand. Among the circumstances that may be relevant for this

purpose, for example, are the transactions preceding the offense, the suspect's response to the inducements of the officer, the gravity of the crime, and the difficulty of detecting instances of its commission." (*Ibid*.)

In *People v. Fromuth* (2016) 2 Cal.App.5th 91 (*Fromuth*), a case with facts similar to our own, our colleagues at the Sixth Appellate District held the trial court did not err in declining to instruct on entrapment. (*Id*. at p. 112.) There, an officer posted an online advertisement pretending to be a " '[y]oung cutie looking for a hookup.' " (*Id*. at p. 96.) He left the age field on the advertisement blank because he intended to pose as a minor and the online platform would have deleted the advertisement if he listed an age younger than 18 years. (*Ibid*.) When the defendant responded to the advertisement, the officer revealed the fictional girl, Maria, was 15 years old. After the defendant suggested doing something other than meeting for sex, the officer ceased communication. About an hour later, the defendant resumed contact through the platform, saying: " 'I hope you found your hookup?' " (*Id*. at p. 97.) The officer indicated that the girl thought she had found someone, but she would message the defendant again if it fell through, prompting the defendant to provide his email address for further communication. Several hours later, the officer emailed the defendant indicating the girl " 'got ditched on' " and asked if he was still interested. (*Ibid*.) The defendant said he was and further messages were exchanged over the next hour. The officer and the defendant discussed where the defendant would pick the girl up, where they would have sex, and what sex acts the girl was willing to do. (*Id*. at pp. 97-98.) When they were finalizing the details for the meeting, the defendant asked whether it was too late for the girl to go out, to which the officer responded: " 'No my mom works nights.' " (*Id*. at p. 98.) Additional sexual details were then discussed. The fictional girl also asked the defendant to bring protection. The defendant was arrested when he arrived at the designated meeting place with a condom. (*Ibid*.)

The *Fromuth* court held the foregoing facts did not support instruction on entrapment, explaining: "[The officer's] conduct would not have induced a *normally law-abiding man* to arrange to have sex with a 15-year-old girl. His conduct did nothing more than present defendant with the opportunity to commit the offense. '[A] person who steals when given the opportunity is an opportunistic thief, not a normally law-abiding person.' [Citation.] Similarly, a person who arranges to have sex with a child when given the opportunity is an opportunistic sexual predator, not a normally law-abiding person. A normally law-abiding person would not have continued to arrange a 'hookup' after [the officer] revealed that 'Maria' was a 15-year-old girl. Nothing [the officer] did thereafter would have ' "pressure[d]" ' a normally law-abiding man to pursue sex with a 15-year-old girl. An objective examination of [the officer's] conduct reveals no basis for an entrapment defense." (*Fromuth, supra*, 2 Cal.App.5th at p. 111.)

So too here. Special Agent Campbell did not badger, cajole, importune, or do anything else that would be likely to induce a normally law-abiding person to attempt to meet a 13-year-old girl for sex. Campbell merely provided defendant with an opportunity to do so. To be sure, defendant initially declined the offer. However, as in *Fromuth*, Campbell ended the communication at that point, stating: " 'Fine.' W-E, indicating, 'whatever.' " It was defendant who resumed the conversation, asking the fictional 13-year-old girl: " 'Where are you located?' " We have already recounted what transpired after that point in considerable detail. For present purposes, it will suffice to note that, aside from a lack of harassment, Campbell did not attempt to induce defendant to meet the fictional 13-year-old girl by appealing to things such as friendship or sympathy. The "inducement" was simply the prospect of having sex with the child. But that is precisely the criminal purpose that a normally law-abiding person would not have. Nor did Campbell do anything that would make the commission of the crime unusually attractive to a normally law-abiding person. Instead, as in *Fromuth*, Campbell simply offered an opportunity to attempt a lewd act with a child.

20

The trial court did not err in declining to instruct on entrapment.

## III

### *Cumulative Prejudice*

Defendant's first instructional error claim is forfeited and the second lacks merit. There is, therefore, no cumulative prejudice to assess.

## IV

### *Challenged Probation Condition*

Finally, defendant challenges a probation condition ordering him to seek and maintain employment, arguing the condition is both unconstitutional and unreasonable. We are not persuaded.

In *People v. Sanchez* (2019) 38 Cal.App.5th 907, our colleagues at the Second Appellate District rejected a nearly-identical challenge to the same probation condition. The court explained:  "We find no infirmity with this condition of probation.  Section 1203.1 specifically authorizes a trial court to 'require as a condition of probation that the probationer go to work and earn money . . .' [Citation.]  Not surprisingly, '[a]n order that a criminal defendant seek and maintain gainful employment as a condition of probation is one commonly imposed.'  [Citations.]  The same is true of conditions requiring a probationer to remain in school and 'maintain satisfactory grades.'  [Citation.]  [¶] Although defendant's ability to 'maintain' 'training, schooling or employment' may not be entirely within her control, any noncompliance with these requirements due to 'circumstances beyond . . . her control' cannot give rise to a probation violation.  [Citation.]  That is because courts routinely imply a 'willfulness' requirement into conditions of probation.  [Citations.]  However, the possibility of noncompliance due to circumstances beyond a probationer's control precludes the *imposition of the condition of probation in the first place* only where the trial 'court can say as a matter of law [that] compliance would be impossible.'  [Citation.]  Here, there was no such showing; indeed,

21

defendant's prior employment constitutes substantial evidence that her compliance is not impossible." (*Id*. at p. 919.)

We agree with this analysis in its entirety. We add that in this case, while defendant's counsel stated at sentencing that defendant was not working, counsel added, "[b]ut that doesn't mean he won't be working in the future. Hopefully, he will be working in the future." Thus, the record does not establish as a matter of law that seeking and maintaining employment would be impossible.

Finally, we are also unpersuaded by defendant's assertion that the condition is unconstitutionally vague. As our Supreme Court has stated, "a probation condition should not be invalidated as unconstitutionally vague ' " 'if any reasonable and practical construction can be given to its language.' " ' [Citation.]" (*People v. Hall* (2017) 2 Cal.5th 494, 501.) The challenged condition requires defendant to look for a job and keep that job to the best of his ability. It is not unconstitutionally vague, notwithstanding the various hypothetical scenarios posited by defendant in the opening brief concerning employer conduct that defendant might find to be "deplorable." We need not specifically address any of these scenarios because no reasonable person would read the condition to require defendant to maintain a particular job in the face of intolerable employer behavior. Such behavior would also be outside defendant's control. At that point, the probation condition plainly and unambiguously requires him to look for a different job. It is not unconstitutionally vague.

DISPOSITION

The judgment is affirmed.

                                 \s\
                                 McADAM, J.[*]


We concur:


\s\
RENNER, Acting P. J.


\s\
BOULWARE EURIE, J.

---

[*] Judge of the Yolo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.