Opinion
 

 McKINSTER, J.
 

 Defendant was convicted of one count of attempted molestation of a child under the age of fourteen years pursuant to Penal Code sections 664 and 288, subdivision (a), in a trial without a jury.
 
 [1]
 
 The trial court placed him on felony probation on the condition that he serve 180 days in jail, and stayed the jail commitment order pending appeal. On appeal he raises three issues: (1) whether the attempt conviction is invalid because his intended victims were in fact imaginary persons, (2) whether the conviction is invalid because the evidence showed only preparation for the offense rather than actual attempt, and (3) whether the police entrapped him into committing the attempt.
 

 Statement of Facts
 

 Defendant placed an advertisement in Swing magazine stating that he was a White male seeking a woman of any race, age, or size to keep up with his sexual appetite. The ad was accompanied by a photo of a nude male having an erection, with the face blocked out. A sheriff’s detective trained to investigate crimes against children became interested in the ad because its reference to women of any age might include children. The detective began a correspondence with defendant, representing himself as a woman named “Helen Glenn,” mother of “Rachel” and “Sandi,” aged respectively 12 and 9.
 

 In his letters, the detective (posing as Helen) explained that “she” was looking for a man to help with the “special education” of “her” children.
 
 *394
 
 Defendant apparently thought at first that Helen was referring to handicapped children, but Helen wrote explaining she was not referring to disability but to wanting a man for her daughters, because she thought that leaving her girls’ “education” to another child would be a terrible mistake. Defendant wrote back, indicating that he now understood Helen wanted someone to teach her daughters everything about the facts of life. He explained that he had spent almost a year “teaching” his stepnieces, then 13 and 14, and had also taught his ex-wife from the age of 13.
 

 “Helen” (the detective) corresponded with defendant from June 7 until July 25, 1994, enclosing a picture of a little girl lying on a bed wearing a red leotard in one of the letters. She asked defendant to describe to her what he wanted to do with the girls, and to write the girls describing what he wanted to happen. Defendant obliged, explaining in his next letter to Helen that he wanted to go slowly, not introducing the girls to intercourse until after they had become comfortable with him. With this letter, defendant enclosed a letter to the girls, telling them he would use sex toys to go inside them and that they would like his alligator underwear. Helen explained in her next letter that she did not want to be involved in these activities herself, but would be there for support during the first meeting.
 

 In a later letter, Helen reassured defendant that she and the girls would not be offended if defendant decided he could not “help” them. She explained that she thought he was the man she had been searching for, but the final decision must be his. Defendant wrote back, stating that Helen would not have to worry about his reconsidering because he was still feeling honored to have the opportunity and had hoped she would not reconsider. He described himself as looking forward to having the opportunity to be a “teacher” again.
 

 At that point, the detective enlisted a female deputy sheriff to assist in the investigation by telephoning defendant, posing as “Helen Glenn.” In her first conversation with defendant, the deputy asked him if he was sure he wanted to go through with the plan, to which defendant answered, “Well, of course.” The deputy also asked defendant what he planned to do, and he explained that in the first meeting he would touch the girls, talk to them and massage them, perform oral sex upon them, and then proceed to intercourse, depending on how well the meeting was progressing. The deputy asked if he understood that this activity was not to include her, to which he answered, “Yeah.”
 

 After this conversation on August 4, 1994, “Helen” (the detective) and defendant continued to correspond. Defendant inquired about the girls’ birthdays, to which Helen replied that Sandi’s birthday was that month and
 
 *395
 
 one or both girls had been told that defendant would possibly send them cards. Defendant stated in his next letter that he had sent Sandi a card. He also left a telephone message wishing Sandi a happy birthday and stating he would have a “good gift” for her when they met. Asked by Helen what he expected from the girls, defendant wrote that, besides “the obvious sexual pleasures,” the girls would give him the “honor” of being a teacher again.
 

 Defendant sent a letter to the girls describing his fantasy of what they would do when he met them. He referred to their prospective encounter as a “f_k session,” and described numerous sexual activities including touching of genitals, play with sex toys, oral sex, and intercourse. In response to this, the deputy telephoned defendant to clarify some of the details of the activities which would take place in a meeting between him and the girls. She also asked defendant again if he wanted to go through with the plan, mentioning the risks they would be taking in carrying through. She told defendant to let her know if he did not want to do it. Defendant replied: “Well, if I wasn’t ready, I wouldn’t keep answering ... the letters.”
 

 A few days later, on October 6, 1994, the deputy phoned defendant again and told him they could meet at a motel, to which he agreed. Soon after that the detective engaged two adjoining rooms at a motel, taking the female deputy along to pose as “Helen Glenn.” The deputy occupied one room, while the detective installed himself in the adjoining room with surveillance equipment. The detective set up a videocamera in the room with the deputy and monitored it from his room. Defendant came to the deputy’s motel room, and the two talked about what he would do with the girls, including intercourse. After the deputy asked if he had brought anything with him, defendant went to his car and brought in sex toys, including “mini-vibrators” and dildos in different sizes, as well as lubricating jelly. When the deputy asked if defendant was prepared to meet the girls, defendant stated that he would not be there if he was not ready. The deputy led defendant into the adjoining room where the detective arrested him and also feigned the arrest of “Helen Glenn.”
 

 After his arrest, defendant told the detective that he had come to the motel only to have sex with Helen, and throughout their correspondence and discussions he had assumed that involving children was just a fantasy that Helen wanted to play out with him. He denied that Helen had said anything about bringing her kids to the motel. He admitted that he had had sex with a stepniece, but stated she was 17 at the time. He stated that just before being led into the room which supposedly contained the children he had said, “Just
 
 *396
 
 a minute.”
 
 [2]
 
 Challenged about whether he would have had sex with the “children” if given an opportunity, he stated, “Maybe, maybe not.”
 

 Discussion
 

 I.
 

 Mistake of Fact
 

 Defendant contends that “. . . there can be no attempt to commit child molestation where the victim is imaginary because appellant could not fulfill all of the elements of the offense.” He argues that he should not have been convicted of attempting to molest children under the age of 14 because there were no children and thus they had no “age.” As we explain below, the fictional nature of the children under 14 whom defendant intended to molest is not determinative of the validity of his conviction.
 

 Section 26 provides in pertinent part that persons who “committed the act or made the omission charged under an ignorance or mistake of fact, which disproves a criminal intent,” are not criminally liable for the act. Put another way, people do not act unlawfully if they commit acts based on a reasonable and honest belief that certain facts and circumstances exist which, if true, would render the act lawful. (E.g.,
 
 People
 
 v.
 
 Beardslee
 
 (1991) 53 Cal.3d 68, 87 [279 Cal.Rptr. 276, 806 P.2d 1311];
 
 People
 
 v.
 
 Rivera
 
 (1984) 157 Cal.App.3d 736, 742-743 [203 Cal.Rptr. 842].) When, however, “ ‘a person
 
 commits an act
 
 based on a mistake of fact, his guilt or innocence is determined as if the facts were
 
 as he perceived them.' " (Rivera, supra,
 
 at p. 743, quoting
 
 People
 
 v.
 
 Osborne
 
 (1978) 77 Cal.App.3d 472, 479 [143 Cal.Rptr. 582], italics added;
 
 Beardslee, supra,
 
 at p. 87;
 
 People
 
 v.
 
 Watkins
 
 (1992) 2 Cal.App.4th 589, 594 [3 Cal.Rptr.2d 563].) There need be no “ ‘present ability’ to complete the crime, nor is it necessary that the crime be factually possible.”
 
 (People
 
 v.
 
 Grant
 
 (1951) 105 Cal.App.2d 347, 356 [233 P.2d 660].)
 

 This rule of law is particularly important in determining culpability for intent crimes. Our courts have repeatedly ruled that persons who are charged with attempting to commit a crime cannot escape liability because the criminal act they attempted was not completed due to an impossibility which they did not foresee: “factual impossibility is not a defense to a charge of attempt.”
 
 (People
 
 v.
 
 Peppars
 
 (1983) 140 Cal.App.3d 677, 688 [189 Cal.Rptr. 879], citing
 
 People
 
 v.
 
 Rojas
 
 (1961) 55 Cal.2d 252, 257-258 [10 Cal.Rptr. 465, 358 P.2d 921, 85 A.L.R.2d 252]; see Note (1960)
 
 *397
 
 48 Cal.L.Rev. 314, and cases cited therein: trend toward abolition of mistake of fact as a defense to attempt crimes.) The California Supreme Court has held that a person who bought property from an undercover police officer, believing it to be stolen even though it was not, was properly convicted of attempting to receive stolen property.
 
 (Rojas, supra,
 
 at pp. 254, 258; accord,
 
 People
 
 v.
 
 Meyers
 
 (1963) 213 Cal.App.2d 518, 521-523 [28 Cal.Rptr. 753].) An appellate court has concluded that a defendant was guilty of attempting to buy heroin, though he actually purchased talcum powder, stating: “ ‘If there is an apparent ability to commit the crime in the way attempted, the attempt is indictable, although, unknown to the person making the attempt, the crime cannot be committed, because the means employed are in fact unsuitable, or because of extrinsic facts, such as
 
 the nonexistence of some essential object,
 
 or an obstruction by the intended victim, or by a third person.’ ”
 
 (People
 
 v.
 
 Siu
 
 (1954) 126 Cal.App.2d 41, 44 [271 P.2d 575], italics added.) In
 
 People
 
 v.
 
 Charles
 
 (1963) 218 Cal.App.2d 812, 816-817, 819 [32 Cal.Rptr. 653], another division of this court held that the defendants had properly been convicted of an attempt to pander though the two women whom the defendants attempted to persuade to become prostitutes in a brothel refused appellants’ importunings. The court commented that the lack of existence of the brothel would not have excused the defendants from criminal liability.
 
 (Id.,
 
 at p. 819.)
 

 Defendant attempts to distinguish this case from cases such as those described above by stressing that the intended victims were “imaginary.” We have concluded that this is a distinction without a difference. Applying the established “perception” standard set out above, if the circumstances had been as defendant believed them to be, he would have found in the room he entered two girls under fourteen available for him to engage in lewd and lascivious conduct with them. Defendant’s failure to foresee that there would be no children waiting does not excuse him from the attempt to molest. Defendant showed no honest and reasonable, or even unreasonable, belief that his actions would have a legal outcome. Thus, defendant’s mistake of fact was not a defense to the crime of attempting to molest girls under 14 years of age.
 
 (People
 
 v.
 
 Rojas, supra,
 
 55 Cal.2d at pp. 257-258.)
 

 II.
 

 Nature of Acts: Preparation or Attempt?
 

 The most compelling issue in this appeal is whether defendant’s acts directly preceding his arrest represented only preparation for the intended offense or an actual attempt to commit it. Must there have been, as defendant contends, potential victims present in the room toward whom he
 
 *398
 
 directed some further act in order for the attempt to be completed, or was his act of entering the room where he expected the victims to be, with a supposed accomplice, having assembled and brought with him lubricant and sex toys useful for children of the expected size, sufficient to complete the crime of attempted molestation? Our analysis leads us to conclude that there was no error in adjudging defendant’s actions an attempt to perform lewd and lascivious conduct with children under the age of 14.
 

 The crime of attempt requires two elements: “a specific intent to commit the crime, and a direct but ineffectual act done toward its commission.” (§ 21a.) Mere acts in preparation for a crime do not constitute an attempt. (E.g.,
 
 People
 
 v.
 
 Buffum
 
 (1953) 40 Cal.2d 709, 718 [256 P.2d 317].) Though it has been suggested that the “direct but ineffectual act” must be an element of the crime attempted, the California Supreme Court rejected this notion in
 
 People
 
 v.
 
 Dillon
 
 (1983) 34 Cal.3d 441, 454 [194 Cal.Rptr. 390, 668 P.2d 697].
 

 In
 
 People
 
 v.
 
 Dillon, supra,
 
 34 Cal.3d at page 455, the Supreme Court also reiterated the rule that the act done in furtherance of the crime must be unequivocal, explaining: “[O]ur reference to interruption by independent circumstances rather than the will of the offender merely clarifies the requirement that the act be unequivocal. It is obviously impossible to be certain that a person will not lose his resolve to commit the crime until he completes the last act necessary for its accomplishment. But the law of attempts would be largely without function if it could not be invoked until the trigger was pulled, the blow struck, or the money seized. If it is not clear from a suspect’s acts what he intends to do, an observer cannot reasonably conclude that a crime will be committed; but when the acts are such that any rational person would believe a crime is about to be consummated absent an intervening force, the attempt is underway ....[¶... Acts that could conceivably be consistent with innocent behavior may, in the eyes of those with knowledge of the actor’s criminal design, be unequivocally and proximately connected to the commission of the crime; it follows that the plainer the intent to commit the offense, the more likely that steps in the early stages of the commission of the crime will satisfy the overt act requirement.”
 

 The facts of
 
 People
 
 v.
 
 Dillon, supra,
 
 34 Cal.3d at pages 451-454, are helpful in deciding the unusual legal issue raised here. In
 
 Dillon
 
 the defendant, along with some other youths, approached a remote marijuana field defendant had previously observed, armed and disguised and intending to steal some of the marijuana crop from the closely guarded field.
 
 (Id.,
 
 at pp. 451-452.) Just outside the field the defendant paused for a long time, fearful that he and his accomplices would be detected by those guarding the field.
 
 *399
 

 (Id.,
 
 at p. 451-452.) While the defendant and the other boys were standing outside the field discussing their next move, a guard came up behind them carrying a gun and defendant proceeded to shoot him.
 
 (Id.,
 
 at p. 452.) Though defendant never took any marijuana or even entered the field, the court concluded he was guilty of attempting to rob.
 
 (Id.,
 
 at p. 456.) It observed that his action of going to the field armed and disguised, knowing the field to be heavily guarded, was an unequivocal act toward the commission of a robbery.
 
 (Id.
 
 at pp. 455-456.)
 

 In this case, the record on appeal clearly supports a reasonable inference that defendant went to the motel and entered the room supposed to hold the children intending to sexually molest them. He had brought sexual items which would aid him in seducing and violating girls of their supposed ages, and when the deputy sheriff asked him if he was ready to meet the girls he answered affirmatively. His act of walking with the undercover deputy into the room he expected to contain the girls was clearly a step beyond mere preparation for the crime, though it was not an element of the crime. That this was an unequivocal first act in carrying out the intended crime is especially evident given that his plan for the seduction was known in detail to the officers at the time they arrested him. Had “real” children been rescued from the room while defendant was talking with their “real” mother, so that the room of assignation was empty when the two entered, our analysis would be the same.
 

 Based on the above analysis, we hold that the fact finder could reasonably have concluded that defendant did an act beyond mere preparation for sexual molestation, an act which was ineffectual in carrying out a molest only because the circumstances were not as he perceived them, not because he never intended to do a criminal act. (§ 21a;
 
 People
 
 v.
 
 Dillon, supra,
 
 34 Cal.3d at p. 454;
 
 People
 
 v.
 
 Rivera, supra,
 
 157 Cal.App.3d at p. 743.) Just because defendant was not given the opportunity to observe, approach, or actually touch “real” children under 14 as part of the sheriff’s department’s “sting” operation does not mean that he was not culpable or criminally liable for stepping, along with a woman he believed to be his accomplice in crime, into the room where he believed he would carry out his seduction of 2 girls under the age of 14 years. The public has a duty to protect children from the predations of adults, and proper police activities in trying to locate and punish those bent on perpetrating sex crimes against children should not be discouraged.
 

 III.
 

 Entrapment
 

 The final consideration in this appeal is whether or not the sheriff’s officers, in their eagerness to flush out potential child molesters, engaged in
 
 *400
 
 entrapment. Defendant argues that the officers induced him to engage in the criminal attempt and he would never have tried to molest children without their inducements. As we explain below, we disagree.
 

 The California Supreme Court set out the proper standard for evaluating the defense of entrapment in
 
 People
 
 v.
 
 Barraza
 
 (1979) 23 Cal.3d 675, 689-690 [153 Cal.Rptr. 459, 591 P.2d 947]: “[W]as the conduct of the law enforcement agent likely to induce a normally law-abiding person to commit the offense? For the purposes of this test, we presume that such a person would normally resist the temptation to commit a crime presented by the simple opportunity to act unlawfully. Official conduct that does no more than offer that opportunity to the suspect—for example, a decoy program —is therefore permissible; but it is impermissible for the police or their agents to pressure the suspect by overbearing conduct such as badgering, cajoling, importuning, or other affirmative acts likely to induce a normally law-abiding person to commit the crime." The court also cautioned that police activities which would generate in a law-abiding citizen a motive for the crime other than the typical criminal intent, such as friendship or sympathy, should be considered entrapping behavior, as should inducements based on exorbitant monetary or other consideration or a guarantee that the act in question is not illegal or will not be detected.
 
 (Id,.,
 
 at p. 690.) Finally, the court instructed that while the inquiry should focus on police conduct, such conduct should “not ... be viewed in a vacuum"; the examination should include the particular circumstances of the offense, such as what transactions preceded the offense, the suspect’s response to an officer’s inducements, the gravity of the offense, and the “difficulty of detecting instances of its commission.”
 
 (Ibid.)
 

 Defendant’s entrapment defense flunks the test just described. He precipitated contact with the officers by placing an ad soliciting sex with a female of “any age.” A detective wrote defendant offering him the opportunity to engage in lewd and lascivious contact with two young children. From the beginning, the writer made it clear that the offer did not include sex with an adult woman, though defendant repeated his desire for such a relationship several times. During the lengthy correspondence and the series of phone calls, the officers gave defendant every opportunity to withdraw from the plan to “teach” sex to the girls, but defendant repeatedly refrained from withdrawing, even stating that he felt “honored” by the “opportunity” offered him. This remained true even after one letter reminded him of the “risks” involved in such an enterprise. Though the officers did request that defendant describe to them what he intended to do with the girls, they gave him no suggestions about his proposed activities, other than indicating that they were looking for a good “teacher” who would make the activities fun.
 

 
 *401
 
 It cannot be said, given the circumstances set out in great detail in the record on appeal, that there was insufficient evidence to support the fact finder’s conclusion that law enforcement officers merely provided an opportunity for defendant to attempt to molest two girls under fourteen years of age.
 
 (People
 
 v.
 
 Barraza, supra,
 
 23 Cal.3d at p. 690.) Moreover, the record contains no evidence that the police cajoled or importuned defendant, or that they in any way overbore his will. Defendant failed to carry his burden to show that he was entrapped, and his defense was properly rejected.
 
 (People
 
 v.
 
 Moran
 
 (1970) 1 Cal.3d 755, 760-761 [83 Cal.Rptr. 411, 463 P.2d 763].)
 

 Disposition
 

 The judgment is affirmed.
 

 Ramirez, P. J., and Ward, J., concurred.
 

 Appellant’s petition for review by the Supreme Court was denied March 12, 1997.
 

 [1]
 

 All further code citations refer to the Penal Code, unless otherwise indicated.
 

 [2]
 

 The transcript of the videotape does not reflect that defendant made any such statement.