Filed 5/28/26  P. v. Goerzen CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br> v.<br><br>DAVID GOERZEN,<br><br>  Defendant and Appellant. | F088874<br><br>(Super. Ct. No. F24900703)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  James A. Kelley, Judge.

Mark Alan Hart, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Christopher J. Rench and Rachelle A. Newcomb, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

David Goerzen exchanged sexual chat messages with girls purporting to be minors, asking them to touch themselves and/or asking them to elicit others to touch them while he was chatting with them and to describe the touching to him. Defendant was arrested after a tip was received from Microsoft and sent to the National Center for Missing and Exploited Children (NCMEC), which local law enforcement investigated. After a court trial, defendant was found guilty of two counts of attempted lewd or lascivious acts on a minor (Pen. Code, §§ 288, subds. (a), (c)(1), 664; counts 1 & 2)[1]; two counts of contact or communication with a minor with intent to commit a sexual offense (§ 288.3, subd. (a); counts 3 & 4); and one count of possession of child pornography with a prior offense allegation (§ 311.11, subds. (a), (b); count 5). Defendant admitted four prior strike convictions within the meaning of the Three Strikes law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)) for lewd or lascivious acts on a minor (§ 288, subd. (a) (section 228(a)).

Defendant was sentenced as a third-strike offender (§ 667, subd. (e)(2)(A)) to an aggregate term of 75 years to life as follows: 25 years to life for count 1 (§§ 664/288(a)); a consecutive term of 25 years to life for count 2 (§§ 664/288, subd. (c)(1) (section 288(c)(1)); and a third consecutive term of 25 years to life for count 5 (§ 311.11, subd. (a)). Execution of the 25-year-to-life sentences for counts 3 and 4 was stayed under section 654.

On appeal, defendant argues there is no substantial evidence to support the attempt convictions under section 288 (counts 1 & 2) because the prosecution did not prove defendant was chatting with humans, let alone minor children. To establish an attempted violation of section 288, the prosecution is not required to prove defendant, in fact, chatted/messaged minor children online—it is sufficient if defendant believed he was

---

[1]     All further statutory references are to the Penal Code unless indicated otherwise.

messaging with minor children. Here, there is substantial evidence to support the convictions for attempted violation of section 288(a) and section 288(c)(1).

## FACTUAL BACKGROUND

In February 2024, an information charged defendant with two counts of attempted lewd or lascivious acts on a child (§§ 288, subds. (a), (c)(1), 664; counts 1 & 2), two counts of contact with a minor for the intent to commit a sexual offense (§ 288.3; counts 3 & 4), and one count of possession of child pornography (§ 311.11, subd. (a); count 5). As to count 5, it was alleged defendant had previously been convicted of a crime requiring registration under section 290 (§ 311.11, subd. (b)). It was also alleged defendant had four prior strike offenses within the meaning of the Three Strikes law.

Defendant waived a jury trial, and the case proceeded to a bench trial in September 2024. Officer Fernando Rosario testified that Microsoft sent a tip to NCMEC showing a user named LegacyWolf2331 (Legacy Wolf) was communicating with a minor. The tip included the chat with the purported minor, and the information was forwarded to local law enforcement. Through a subpoena, Rosario was able to connect the username to defendant, and Rosario obtained thousands of chat messages defendant had with others through a Microsoft Live gaming account. Although he did not review all the chats, Rosario identified multiple suspected victims. However, Rosario never positively identified the real names or identities of any users believed to be the minor children with whom defendant messaged.

In one of the chats, Legacy Wolf messaged a user whose tag was Destiny4065. This user told Legacy Wolf she was a 15-year-old girl. Legacy Wolf asked her what she was wearing, and she responded she was wearing shorts and a bra. Legacy Wolf asked her to take off her panties and shorts and told her to touch herself; he also asked her about engaging in sexual activities with her brother. Legacy Wolf directed her to go to her brother's room while not wearing panties, to bend over in front of him, and asked if she felt something. She wrote that she was going along with Legacy Wolf's instructions, and

3.

Legacy Wolf continued to direct her to do more things. Legacy Wolf told her to ask her brother to "f you right now," to which she responded, "Ok." He asked her to text him everything her brother was doing.

In Rosario's opinion, Destiny4065 was describing having sex with her brother, although there was no definitive information that in fact occurred—only that she referred to it. Legacy Wolf continued to talk with Destiny4065 about having sex with her brother, and later in the conversation Legacy Wolf told her to let her brother "'thrust his huge cock inside you right now, please.'" She responded, "'Okay.'" Rosario was not able to ascertain whether images or photographs were exchanged within this chat, but Legacy Wolf did ask for pictures of Destiny4065.

In another chat Microsoft provided, Legacy Wolf communicated with a user named Mommy6016 on July 24, 2023. Mommy6016 identified herself as 13 years old. Under the auspices of a game of truth or dare, Legacy Wolf dared her "'to get your dad and I'll tell you what to do next.'" They continued to text, and Mommy6016 indicated she was doing what Legacy Wolf asked. Legacy Wolf asked her to stand next to her dad, next to the bed, and then bend over in front of him. He asked her if she felt something, although Legacy Wolf did not specify to what he was referring. He asked her if she "fe[lt] it in [her]," referring, in Rosario's opinion, to her father's penis. Mommy6016 did not respond after that.

Rosario discovered approximately eight chats that were like those with Destiny4065 and Mommy6016. Legacy Wolf had messaged with Jordyn9513, who identified herself as an 11-year-old girl. Rosario believed Jordyn9513 was a minor because she referred to her father as being 40 years old. Legacy Wolf responded that he was 43 years old, which was significant because it matched defendant's actual age at that time, and he messaged that he lived in California. Legacy Wolf began messaging Jordyn9513 about whether she wanted to play truth or dare, and the conversation went in a sexual direction. He told her to do the same type of things he had asked of others,

4.

including telling her to get her brother and sit on his lap. She responded that this was kind of weird, but Legacy Wolf told her to do it and would tell her why later. Jordyn9513 responded that he was "'kind of being suspicious,'" and Legacy Wolf apologized and that he would leave her alone. However, Legacy Wolf continued the conversation, asking her to try to get her brother between her thighs. She asked why, and the conversation ended.

In another chat, Legacy Wolf communicated with a user identified as Strawbryslayr. This user indicated living in Washington, but did not specify an age. Legacy Wolf asked if Strawbryslayr was looking for a boyfriend, and Strawbryslayr said yes. Legacy Wolf asked if Strawbryslayr wanted to "sext" or role play and asked, "'[h]ow bad do you want to feel a huge […] in you?'"; between the words "'huge'" and "'in you,'" Legacy Wolf inserted an image of an eggplant which, according to Rosario, typically refers to a penis. Legacy Wolf identified himself as being from California in this chat.

In yet another chat, Legacy Wolf communicated with a user called Serenitysm21. She identified herself as 17 years old. He asked her whether she was "'wet,'" as in sexually aroused, and she responded she was not. Legacy Wolf also asked, "'[w]ant me to F you?,'" to which she responded yes. He also asked if she was "'getting FKD,'" meaning having sexual intercourse, to which she responded yes. He also asked for a picture of her breasts, but it could not be ascertained from the chat whether Serenitysm21 sent a photo.

Once the chats were reviewed, investigation showed the account was associated with defendant's address. Rosario discovered defendant was on parole and a current sex-offender registrant. After contacting defendant's parole agent, a team of officers went to defendant's home to execute a search warrant. Rosario interviewed defendant at the scene, which was video recorded. Defendant acknowledged control of the Legacy Wolf account, but he indicated the account had been banned for reasons he was unaware.

Defendant indicated he believed he had communicated with minors during some of his chats, but he had been looking to chat with any person, not anyone of a specific age. He admitted to masturbating "[o]nce in a while" to some of those conversations. He admitted he had sent some users pictures, and females had also sent him photographs.

Upon execution of the search warrant, two cell phones and an X-box were seized. One cell phone contained elicit photographs, two of which Rosario opined included young girls about 10–12 years old. In one photo, a girl was touching her vagina, and the second photo displayed another minor's face, breasts and vagina.

The defendant offered no evidence and, after closing arguments, the trial court found defendant guilty on all counts. Defendant waived his jury trial right with respect to the prior conviction allegations, and admitted each of the priors. At the sentencing hearing, the court sentenced defendant as a third-strike offender, and imposed consecutive terms of 25 years to life on each count. Execution of the sentences on counts 3 and 4 was stayed under section 654. The aggregate sentence imposed was 75 years to life.

## DISCUSSION

Defendant argues the evidence is insufficient to prove the online chats he had with user Destiny4065 and Mommy6016 rose to the level of an attempted lewd act on a child under section 288(a) or section 288(c)(1) because the prosecution did not show defendant was messaging with real people, let alone children. Instead, the prosecutor's case was premised on the theory defendant believed he was communicating with minors, which defendant contends cannot constitute a direct but ineffectual step toward committing the crime.

### I.     Standard of Review

When a defendant challenges the sufficiency of the evidence supporting a criminal conviction, an appellate court "'''must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—

that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'"'" (*People v. Brooks* (2017) 3 Cal.5th 1, 57.) "'"'Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence.'"'" (*People v. Navarro* (2021) 12 Cal.5th 285, 339.) Under this standard, an appellate court presumes the existence of every fact the trier of fact could reasonably deduce from the evidence in support of the judgment. (*People v. Clark* (2011) 52 Cal.4th 856, 943.)

## II.   Analysis

In relevant part, section 288(a) provides as follows: "Except as provided in subdivision (i), any person who willfully and lewdly commits any lewd or lascivious act … upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony .…" Similarly, section 288(c)(1) makes it a crime for a person to commit "an act described in subdivision (a) with the intent described in that subdivision" with a child 14 or 15 years old.

"The statute is violated if there is '"any touching" of an underage child accomplished with the intent of arousing the sexual desires of either the perpetrator or the child.'" (*People v. Villagran* (2016) 5 Cal.App.5th 880, 890 (*Villagran*).) Thus, the offense has two elements: (1) the touching of an underage child's body; (2) with sexual intent. (*Ibid.*) The requisite touching may be constructive: it "may be done by the child on his or her own person provided it was caused or instigated by a perpetrator having the requisite specific intent." (*Ibid.*) In addition to actual or constructive touching, section 288(a) requires the specific intent of "arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or of the child .…" (*Ibid.*) The factfinder may examine all relevant circumstances to determine whether the defendant acted with the requisite intent. (*Villagran, supra,* at p. 891.)

7.

"'To sustain a conviction of attempted violation of section 288(a), the prosecution has the burden of demonstrating (1) the defendant intended to commit a lewd and lascivious act with a child under 14 years of age, and (2) the defendant took a direct but ineffectual step toward committing a lewd and lascivious act with a child under 14 years of age.'" (*Villagran, supra*, 5 Cal.App.5th at p. 890, quoting *People v. Singh* (2011) 198 Cal.App.4th 364, 368.) There is a material difference "'between the preparation antecedent to an offense and the actual attempt to commit it. The preparation consists of devising or arranging the means or measures necessary for the commission of the offense, while the attempt is the direct movement toward its commission after the preparations are made." (*People v. Memro* (1985) 38 Cal.3d 658, 698, overruled on other grounds by *People v. Gaines* (2009) 46 Cal.4th 172, 181, fn. 2.)

Defendant argues his conduct did not rise to the level of an attempted lewd or lascivious act on a child under section 288(a) because "[t]he prosecution did not prove [he] was chatting with real people, let alone children." The evidence, defendant maintains, established "nothing more than [defendant] engaging in an internet fantasy during which he may have believed he was chatting with minors, but he was not looking for any person of a specific age."

We are not persuaded. An *attempted* violation of sections 288(a) and 288(c)(1) did not require the prosecution to prove either of the victims were, in fact, a minor, or even a real person, so long as defendant believed they were. As explained in *Hatch v. Superior Court* (2000) 80 Cal.App.4th 170 (*Hatch*), "[a] defendant is guilty of an attempt when he harbors a specific intent to commit the target crime and does a direct, although perhaps ineffectual, act toward its commission. [Citation.] The act need not be an element of the substantive offense, but only an immediate step in the present execution of the criminal design." (*Id.* at p. 185.)

In *Hatch*, the defendant was charged with, among other things, an attempted violation of section 288(a) after he began online messaging with an adult posing as a girl

under the age of 14. The court observed the fact the prosecution could not show the defendant's intended victim was "in fact under 14 years of age" was "irrelevant to his culpability for attempting the charged crimes. If [the defendant] had the specific intent to complete the target crimes, the impossibility of completing the crimes does not exonerate him from attempting those offenses." (*Hatch, supra*, 80 Cal.App.4th at pp. 185–186.)

The court explained, "'the defendant must have the specific intent to commit the substantive offense, and that under the circumstances, as he reasonably sees them, he does the acts necessary to consummate the substantive offense; but because of circumstances unknown to him, essential elements of the substantive crime are lacking. [Citations.] It is only when the results intended by the actor, if they happened as envisaged by him, would still not be a crime, then and only then, can he not be guilty of an attempt.'" (*Hatch, supra*, 80 Cal.App.4th at p. 186, quoting *People v. Meyers* (1963) 213 Cal.App.2d 518, 523; cf. *People v. Collom* (2020) 52 Cal.App.5th 35, 44 [*attempted* violation of § 313.1 does not require intended victims to "in fact" be under the threshold age or "even real people" if the defendant thought they were; however, because the defendant was charged with violating § 313.1, and not an attempted violation, a fictious victim was fatal to the conviction].)

*Hatch* premised its reasoning on *People v. Reed* (1996) 53 Cal.App.4th 389 (*Reed*), where that court held the defendant was guilty of attempted molestation of a child under section 288(a) even though his intended victims did not exist, but were in fact officers posing as the mother of minor victims. (*Reed, supra*, at pp. 393–395, 397.) *Reed* explained that courts have repeatedly held that persons charged with attempt crimes "cannot escape liability because the criminal act they attempted was not completed due to an impossibility which they did not foresee: 'factual impossibility is not a defense to a charge of attempt.'" (*Id.* at p. 396.) Applying this reasoning, the court explained that had the circumstances been as the defendant "believed them to be, he would have found in the room he entered two girls under fourteen available for him to engage in lewd and

9.

lascivious conduct with them. [The d]efendant's failure to foresee that there would be no children waiting does not excuse him from the attempt to molest." (*Id.* at p. 397; see *People v. Korwin* (2019) 36 Cal.App.5th 682, 689 [fictitious victim played by law enforcement officer did not undercut violation of § 288.3 for attempted contact or communication with a minor with the intent to commit specified sexual offenses].)

Here, defendant challenges the sufficiency of the evidence as to his convictions for attempts to violate section 288(a) and section 288(c)(1) related to his chats with Mommy6016 (count 1; §§ 664/288(a)) and Destiny4065 (count 2; §§ 664/288(c)(1)). Although the prosecution did not prove that either of these users were, in fact, minors, they both identified themselves in their chats with Legacy Wolf as minors. Mommy6016 indicated she was 13 years old, while Destiny 4065 identified herself as 15 years old. In his interview with police, defendant admitted Legacy Wolf account was his "gamer tag." He also admitted that when the users he was chatting with identified themselves as minors, it got him a little excited and he masturbated to the chats once in a while. The chats, defendant's police interview, and Rosario's testimony constitute substantial evidence the minors identified themselves as underage, and defendant believed they were minors.

And, although defendant argues it is *possible* to have a fantasy chat through characters who are not real and created by artificial intelligence, there is no evidence defendant believed himself to be engaged in, or had sought out, fantasy chats with fictious artificial intelligence characters. For example, in context, the chats provide evidence sufficient to infer defendant believed he was chatting with a human: in defendant's conversation with Destiny4065, he tried to convince her not to self-harm anymore through cutting herself, which she said she started after one of her brothers committed suicide.

Moreover, a defendant does not have to be physically present when the illicit touching occurs—the touching may be constructive. (*Villagran, supra*, 5 Cal.App.5th at

10.

p. 883.) For example, in *People v. Imler* (1992) 9 Cal.App.4th 1178 (*Imler*), the defendant telephoned the home of a 12-year-old boy and ordered him, at threat to the boy's father, to disrobe and touch his own penis. The boy did not touch himself, even though the defendant told him to do so repeatedly, but the boy falsely told the defendant he had complied and then hung up the phone. (*Id.* at p. 1180.) The appellate court held this was sufficient to establish an attempt to violate section 288(a). (*Imler, supra*, at p. 1179.) The court explained that whether the victim complied with the request was irrelevant; the court reasoned the touching necessary to violate the statute "'may be done by the child victim on its own person providing such touching was at the instigation of a person who had the required specific intent.'" (*Id.* at p. 1182.)

With regard to Mommy6016, defendant told her during their chat to bend over in front of her father; she indicated she was complying. He asked if she felt something, and she responded, "'Yeah, I guess.'" As to Destiny4065, Legacy Wolf asked her to remove her clothing and touch herself; he also asked her to perform sexual acts with her brother, and she indicated she was going along with those instructions. The content of the chats establish defendant was attempting to solicit the minors to touch themselves and to receive sexual touching from others in a manner that was meant to arouse defendant and/or the victims. He asked the minors to describe the touching, and he asked Destiny4065 whether she was aroused by the touching.

Finally, as we understand defendant's argument, he also contends his online chats did not constitute any actual step to violate the statute. For example, defendant distinguishes cases such as *Villagran* not only because the victims in that case were identified and their ages were proven, but because the conduct went beyond "merely chatting." Defendant also notes the cases *Villagran* relied on, too, were not limited to social media chats. For example in *Villagran*, defendant notes Villagran sent drawings and a picture of himself holding his penis to his victims. In *People v. Hanna* (2013) 218 Cal.App.4th 455 (*Hanna*), the defendant arranged to meet the person with whom he was

11.

communicating, and he went to the location of the arranged meeting. (*Id.* at pp. 459–460.) And, in *People v. Crabtree* (2009) 169 Cal.App.4th 1293 (*Crabtree*), the defendant exchanged photographs with an officer posing as the intended victim, purchased a bus ticket for her, and arranged to meet with her. (*Id.* at pp. 1306–1308.) Defendant similarly distinguishes *Reed, supra,* 53 Cal.App.4th 389 and *People v. Moses* (2020) 10 Cal.5th 893 as involving actual physical steps to commit the act rather than mere communication.

The fact that the defendants in these cases tried to elicit even *more* contact with their victims than defendant did here, such as requesting they send photographs of themselves (*Villagran, supra*, 5 Cal.App.5th at pp. 884–885) or arranging a meeting for the purposes of sexual activity (*Hanna, supra*, 218 Cal.App.4th at p. 459; *Crabtree, supra*, 169 Cal.App.4th at pp. 1306–1308) does not lessen the steps defendant took to elicit constructive touching of his victims for the purpose of his arousal and sexual gratification. Specifically, and similar to *Imler*, defendant prompted the minors to touch themselves and/or have *others* touch them sexually while he was chatting with them, and asked minors to describe the touching in the chat and how it felt upon their indication of compliance. (See *Imler, supra*, 9 Cal.App.4th at p. 1182 ["It matters not that Imler could not touch his victim.… The accused does not have to commit the lewd act. The defendant's intent may be inferred from his conduct which was to order the victim to commit a lewd act upon himself."].)

In sum, despite that the prosecution did not prove the identity and age of the users with whom defendant chatted, there is substantial evidence defendant believed those he chatted with were underage children. In these chats, defendant asked them to touch themselves, and he asked them to solicit others to touch them sexually. This is substantial evidence defendant took a direct but ineffectual step to violate sections 288(a) and 288(c)(1).

## DISPOSITION

The judgment is affirmed.

MEEHAN, J.

WE CONCUR:

DETJEN, Acting P. J.

SNAUFFER, J.

13.